## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**Judy Flumerfelt aka Judy Grzela**
individually and all those similarly situated
in the City of Taylor,

Plaintiffs,

                                             **Case No.**

v                                             **Hon.**

**City of Taylor, Richard Sollars,** Former
Mayor City of Taylor
sued in his official and individual capacities,
**Wayne County**, **Jeffery Baum,**
City of Taylor Community Development
Manager in his official and individual capacities,
**Realty Transition LLC., Taylor Two Rehabilitation LLC**
**Shady Awad, Taylor South Investment LLC**
**and Hadir Altoon and Brooke M. Hefner and**
**Michael D. Hefner**, wife, and husband and all
**similarly situated subsequent transferees,**

Defendants.

                                        **\*\*CLASS ACTION\*\***

_____/
SCOTT F. SMITH, (P-28472)
SMITH LAW GROUP
30833 Northwestern Highway, Suite 200
Farmington Hills, MI   48334
Phone: 248-302-7181
smithsf.law@gmail.com
_____/

### COMPLAINT

NOW COMES Plaintiff Judy Flumerfelt, both individually and as class

representative, by and through counsel Smith Law Group PLLC and for their

Complaint states as follows:

## PARTIES

1.     Plaintiff Judy Flumerfelt aka Judy Grzela is named in her individual capacity and as proposed class representative as the former title holder and/or owner of property in the City of Taylor, Michigan, in which real property was foreclosed upon due unpaid property taxes which caused them all injury and monetary damages through unconstitutional acts and/or other statutory and common law violations which included the stripping of their equity in connection with a criminal conspiracy to commit bribery.

2.     Defendant Richard Sollars ("Sollars" or "Mayor") was the Mayor of the City of Taylor including the period from 2015-2019; he is sued in his official and personal capacity.

3.     Defendant City of Taylor ("Taylor") is a Michigan municipal corporation formed under the laws of the State of Michigan.

4.     Defendant Wayne County is a political subdivision of the State of Michigan which, through its Treasurer, is delegated the responsibility to collect delinquent property taxes.

5.     Defendant Jeffery Baum ("Baum") was the Taylor Community Development Manager his official and personal capacities.

6.     Defendant Realty Transition LLC ("RT") is a Michigan Limited Liability Corporation which was controlled by Shady Awad.

2

7.      Defendant Shady Awad ("Shady") is an individual that controlled RT.

8.      Defendant Taylor South Investment LLC ("Taylor South") is a Michigan Limited Liability Corporation which was controlled by Hadir Altoon.

9.      Hadir Altoon ("Altoon") is an individual that controlled Taylor South.

10.     Taylor Two Rehabilitation LLC ("Taylor Rehab Two") is a Michigan Limited Liability Corporation which was controlled by Shady Awad.

11.     Brooke M. Hefner and Michael D. Hefner, wife and husband, and all subsequent transferees of Plaintiff's property.

## JURISDICTION

12.     This is a civil action brought seeking unpaid "just compensation" and other monetary damages against Defendants for violation of the Fifth, and Fourteenth Amendments of the United States Constitution.

13.     This court has jurisdiction pursuant to 42 USC § 1983.

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which authorizes federal courts to decide cases concerning federal question jurisdiction; 28 U.S.C. § 1343, which authorizes federal courts to hear civil rights cases, 28 U.S.C. § 2201, which authorizes declaratory judgments via the Declaratory Judgment Act; 28 U.S.C. § 1367, which authorizes supplemental state law claims, and Title 18, Section § 1961, of the Racketeer Influence and Corrupt Organizations (RICO) Act

which provides civil remedies and treble damages for victims of an on-going criminal enterprise and 42 U.S.C. § 1983.

15.     Jurisdiction also arises under the Fifth and Fourteenth Amendments to the United States Constitution and as a result jurisdiction is proper pursuant to 28 U.S.C § 1331.

16.     Plaintiff both individually and as class representatives do not contest the tax assessed or attempt to interfere with its collection under state law but only seek compensation for the taking of their surplus equity and injuries other than tax collection.

17.     Plaintiff individually and as class representatives seek damages in excess of $75,000.

18.     Venue is proper in this Court as Defendants, individually and collectively, conduct their business in Taylor, which lies within the jurisdiction of the Eastern District of Michigan, and Plaintiff and putative class members were injured in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

19.     Plaintiff Judy Flumerfelt and the other class members were the owners of the real property that was situated in Taylor ("Flumerfelt Property").

20.     The Flumerfelt Property is commonly known as 6741 Mayfair Street, Taylor, Michigan 48180.

21.     Plaintiff had inherited the Flumerfelt Property from her mother, Lottie Grzela, who had passed away in 2003.

22.     Plaintiff owed approximately $15,000.00 in delinquent property taxes, interest penalties and fees (hereinafter, "delinquent property taxes" is defined as including taxes, interest, penalties, and fees).

23.     Plaintiff's late mother, according to the records Register of Deeds, was issued a certificate of Redemption on 10/21/2013.

24.     Sometime in 2015, on information and belief, the Flumerfelt Property was foreclosed by the Wayne County Treasurer.

25.      Wayne County Treasurer never recorded a treasurer's deed in favor of any entity.

26.     Next, On January 11, 2016, the Flumerfelt Property was conveyed by quit claim deed from Taylor to RT for $10.00.

27.      On March 15, 2017, the home was transferred from RT to Taylor Rehab Two for $10.00.

28.     Finally, the Flumerfelt Property was sold for $165,00.00 on April 19,2019, and recorded on May 6, 2019, by Brooke M. Hefner and Michael D. Hefner, wife and husband.

29.     Wayne County is the Foreclosing Governmental Unit (FGU) in each one of the tax foreclosures that affected the class representative and putative class members.

30.     Wayne County seized ownership of over 150 properties owned by Plaintiff and the putative class members, transferring all the real estate to Taylor for the minimum bid.

31.     Defendants planned, schemed, and conspired to utilize a statutory right of first refusal MCL § 211.78m to acquire the properties for the minimum bid from Wayne County.

32.     In many instances the Plaintiff's and the putative class members made substantial payments of 1-2 years of property taxes prior to March 31st of the year of foreclosure, being advised by the Treasurer or his staff that such payments would prevent foreclosure.

33.     FGU conveyed most of the properties not in compliance with the General Property Tax Act in effect at the time.

34.     In actuality, Plaintiff and the putative class members had no redemption period as the tax foreclosure occurred after March 31st of the tax year.

35.     In most instances there was not any recording of the foreclosure if at all until after July 1, of the tax year of foreclosure.

6

36.     Plaintiffs and potential class members did not have any mortgage liens on their properties.

37.     The properties were particularly selected by Sollars, Baum, and his co-conspirators. Sollars formulated policies and conduct which allowed the conversion of Plaintiff's and putative class members' equity when seizing the entirety of Plaintiff's and putative class members' equity in excess of the delinquent taxes owed, injuring Plaintiff and putative class members without any adequate, certain, or reasonable procedure to obtain just compensation for the taking of their property.

38.     Specifically, on or about July 20, 2015, and without a legitimate bid process, Sollars recommended to the Taylor City Council that RT be awarded all of the tax-foreclosed properties that Taylor had or would acquire under Taylor's Right of First Refusal program ("ROFR").

39.     In the summers of 2015, 2016, 2017 and 2018, at Sollars' direction, RT was awarded the vast majority, if not all, of the tax-foreclosed properties in Taylor's ROFR program.

40.     On or about July 19, 2018, without the knowledge of the Taylor City Council, but with the knowledge and approval of Sollars and Baum, Altoon, as owner of Taylor South, entered into an "Assignment of Development Agreement" with RT to transfer tax-foreclosed properties that the City of Taylor had originally awarded to RT to Taylor South.

41.    In July 2018, with the knowledge and approval of Sollars and Shady, and pursuant to the Assignment of Development Agreement, Baum provided Altoon a list of properties that were eventually transferred and/or were intended to be transferred to Taylor South by RT that had been previously awarded to RT under Taylor's ROFR program.

42.    Altoon gave Baum $500 per property for a total of $4,500 in cash to reward Baum for helping him obtain the properties.

43.    On or about August 27, 2017, Shady quit claim deeded to Altoon properties that the City of Taylor had originally transferred to Shady under the ROFR program.

44.    On or about December 5, 2018, Shady quit claim deeded to Altoon properties that the City of Taylor had originally transferred to Shady under the ROFR program.

45.    On or about February 8, 2019, Shady quit claim deeded to Altoon properties that the City of Taylor had originally transferred to Shady under the ROFR program

46.    Between 2015 and February 2019 the Mayor, Baum and the other named Defendants did "unlawfully, willfully and knowingly combine conspire" and agreed to corruptly solicit and obtain to accept and have paid anything of value intending to be influenced, rewarded, or bribed in connection with a series of real

estate transactions concerning Taylor. This bribery scheme utilized foreclosed properties obtained using Properties obtained by using the then existing ROFR.

47.    The ROFR was supposed to utilized for a public purpose but in the approximately 210 transactions using ROFR, it was only used as a carrot for a bribery scheme.

48.    Sollars, Awad and Baum have been indicted by the Grand Jury in the Eastern District of Michigan for crimes relating to the ROFR program.

49.    Shady and Altoon have pleaded guilty to several of those crimes and have admitted to several facts regarding the criminal conspiracy.

50.    Wayne County should have known that the properties were not transferred for a legitimate purpose.

51.    In *Rafaeli v. Oakland County*, 505 Mich. 429 (2020), Michigan's Supreme Court has held that property owners have a constitutional right under the Michigan Constitution to part of the surplus equity of their property above the amount of the delinquent tax.

52.    Plaintiff and the putative class members have no "reasonable, certain, and adequate remedy" to obtain the return of their equity under the United States Constitution and its Amendments.

53.     Plaintiff and the putative class members have no reasonable, certain complete or efficient remedy in the courts of the State of Michigan to enforce their Fifth amendment property rights.

54.     Plaintiff and the putative class members assert that the Defendants' actions had a pattern and practice of a conspiracy to defraud tax-delinquent citizens of Taylor hard-earned equity and amounts to a continuing criminal enterprise expressly prohibited by the RICO Act 18 U.S.C. § 1961 *et seq*.

55.     There is no transparency in the finances of the Defendant's and there is a need to shed light on the Defendant entities to determine the extent of financial irregularities and the unjust enrichment caused by the by their illegal conduct.

56.     The transfer of the properties under ROFR scheme was used for private political gain and was a criminal and civil conspiracy.

57.     Appellate Judges in both the Michigan Supreme Court and Michigan Court of Appeals as well as in the United States Court of Appeals for the Sixth Circuit (Judges Viviano, Shapiro and Kethledge) in a similar case have labeled the taking of surplus equity tantamount to theft.

58.     Defendants, especially Wayne County, refuses to pay just compensation for the taking of equity above any lawful monies owed for property taxes.

59.     There has not been any restoration of the equity or surplus equity taken from Plaintiff and the putative class members.

60.     Defendants Wayne County and Taylor have not initiated any condemnation actions or proceedings for the amounts in excess of the tax delinquency.

61.     This process has been previously called "theft," "unconscionable," "shocking to the conscience" and a "manifest injustice" by Federal and Michigan Court of Appeals judges.

62.     This practice is governance for profit and includes many elected and appointed officials of Taylor.

63.     This case seeks to establish that these actions are violations of the Fifth and Fourteenth Amendments to the United States Constitution.

64.     This is a civil action brought pursuant to 42 U.S.C.§ 1983 seeking monetary damages and declaratory relief against Defendants for violations of the Fifth and Fourteenth Amendments.

65.     Wayne County, through its Treasurer, sought and obtained a tax foreclosure judgment from the Wayne County Circuit Court taking the property interests of Plaintiff and putative class members due to unpaid taxes and administrative expenses, costs, and interest.

66.     Defendants, since 2015, have taken more than 200 homes from Plaintiff and putative class members in Taylor and have retained all of the surplus equity in these takings and have given the funds to other named defendants without any meaningful way for prior homeowners to reacquire their properties for the taxes owed.

67.     The conduct of Defendants was reckless and/or fraudulent and undertaken with complete indifference to Plaintiff's and putative class members' federal rights to be free from violation of the Fifth and Fourteenth Amendments to the United States Constitution as applied against municipalities and those acting under color of law.

68.     Wayne County and Taylor and the other named public officials refused to return the excess equity beyond the tax debt and administrative expenses, penalties and interest and have appropriated the Plaintiffs' property's equity and/or surplus equity for public use without just compensation by Wayne.

## CLASS ALLEGATIONS

69.     Plaintiff repeats, realleges and reincorporates all preceding paragraphs herein by reference.

70.     Plaintiff and putative class members bring this action against Defendants on Plaintiff's own behalf and pursuant to Rule 23(a) and 23(b)(1)(A), (B) and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of all titleholders

of real property and associated property rights including equity or surplus proceeds generated by the involuntary transfers orchestrated by Defendants in Taylor during the relevant statutorily-limited time period who were subject to the unconstitutional conduct and concerted actions which resulted in the taking and/or unconstitutional forfeiture of their surplus or excess equity beyond the tax debt owing and due.

71.    The proposed class consists of all eligible property owners who during the relevant statutorily limited period, had a property seized by the Wayne County which was transferred to Taylor and thereafter transferred to the for $10.00 or token consideration for unpaid property taxes.

72.    The number of injured individuals who have been constitutionally injured is sufficiently numerous to make class action status the most practical method to secure redress for injuries sustained and class wide equitable relief.

73.    The class is so numerous that in 2016, 2017, 2018 and 2019 the class is composed of over members which involves over 130 parcels of real property and associated equity. There are additional putative members from 2019.

74.    Defendants through a more insidious scheme obtained all the surplus equity in the Plaintiff's and putative class members' homes without any meaningful remedy for retrieving the surplus that the Michigan Supreme Court called an unconstitutional taking in *Rafaeli*.

75. There are clear questions of fact raised by the named Plaintiff's claims common to, and typical of, those raised by the putative class members she seeks to represent, including:

a) Wayne County through its Treasurer has been voluntarily and purposefully utilizing an unconstitutional statute MCL 211.78m which he has undertaken pursuant to his discretion to transfer properties to the City of Taylor.

b) Each class member's property prior to tax foreclosure was worth in excess of the total tax delinquency owed to Wayne County.

c) Taylor through its officials then transferred Plaintiff's and putative class members properties by quit claim deed to Defendants RT, Taylor South, and Taylor Two;

d) Taylor paid the amount of the transfer price to Wayne County Treasurer the so called "minimum bid."

e) Taylor pursuant to a conspiracy and public corruption bribery then sold the properties or intends to sell the properties for fair market value to Co-conspirator Defendants LLC.

f) Wayne County and Taylor refused to pay just compensation, failed to initiate any form of condemnation proceedings, and to date failed to have or undertake a process to return the surplus equity, physical possession of Plaintiff's and putative class members' former homes, and equitable damages to Plaintiff and putative class members; and

g) The unjust enrichment and collision of the Defendants.

76. There are clear questions of law raised by the named Plaintiff's claims common to, and typical of those raised by the putative class she seeks to represent, including:

a) Whether the defendants committed an unconstitutional taking by refusing to pay just compensation when seizing property in the

form of equity and/or monies beyond the amount of unpaid taxes and administrative expenses, costs and interest owed in a tax delinquency, and have appropriated property in the form of excess or surplus equity for public use without the payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution;

b)   Whether the defendants committed an inverse condemnation by destroying equity via the seizure process and/or the later sale of property at a highly reduced, below fair market price and then retaining the remaining proceeds from the sale of tax foreclosed property that exceeded the amount of the tax delinquency in accordance with MCL § 211.78m;

c.   Whether Wayne County and Taylor can utilize MCL § 211.78m to deny Plaintiff and putative class members just compensation in violation of the Fifth Amendment takings clause.

d)   Whether Plaintiff and putative class members have an "adequate, certain and reasonable" remedy under Michigan Law; and

e)   Whether the Defendants were unjustly enriched

f)   Whether Conspirators criminal Conspiracy amounts to a civil conspiracy.

g)   Whether a conspiracy exists under 42 USC § 1983.

77.   The violations of law and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all Class members.

78.   Plaintiff, as Class representative, will fairly and adequately protect the interests of the Class members and will robustly prosecute the suit on behalf of the Class; and is represented by sufficiently experienced counsel.

79.   Defendants have acted, failed to act, and/or are continuing to act on grounds against Plaintiff and all members of the Class in the same manner.

15

80.     The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

**COUNT I**
**TAKING WITH OUT JUST COMPENSATION**
**FIFTH/FOURTEENTH AMENDMENT, 42 U.S.C. § 1983**
**(AGAINST WAYNE COUNTY, TAYLOR, SOLLARS AND BAUM ONLY)**

81.     Plaintiff repeats, realleges and reincorporates all preceding paragraphs herein by reference.

82.     Defendant Wayne County and the Defendants who are or were officials of Wayne County and Taylor have taken property in the form of equity and/or monies beyond the amount of unpaid taxes and administrative expenses, costs and interest and have appropriated said monies for public use without the payment of just compensation.

83.     Such conduct violates the Fifth Amendment made applicable to the states via the Fourteenth Amendment to the United States Constitution which requires the payment of just compensation upon a taking by those Defendants. *See Knick v. Twp. of Scott*, 139 S.Ct. 2162 (2019).

84.     Plaintiff's and putative class members' right to just compensation upon the taking of their property is a fundamental right deeply rooted in Anglo -American legal traditions and essential to the framers' concept of ordered liberty.

16

85. This claim is being made pursuant to 42 U.S.C. §1983 which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated, or declaratory relief was unavailable.

86. No state court inverse condemnation or takings procedure is available by operation of Michigan case law that pertains to the circumstances of this case.

87. Despite the Michigan Supreme Court in *Rafaeli* finding that there exists a property right of a taxpayer in a commercial foreclosure under the Michigan Constitution to the surplus from a tax auction, there still exists "no reasonable, certain and adequate remedy" under the Fifth Amendment takings clause of the United States Constitution as to the Plaintiffs and class members.

88. *Rafaeli* also did not uphold the constitutional standard enunciated in *Knick v. Township of Scott* that a" property owner has an actionable claim when the government takes property without paying for it." *Knick*, 139 S.Ct. at 2167.

89. Prior to *Knick*, a Plaintiff suing in federal court had to first exhaust remedies in state court before bringing an inverse condemnation action. In *Knick*, the United States Supreme Court held that plaintiffs did not have to wait to exhaust

17

state remedies but there was federal court jurisdiction as soon as a taking of private property for public use without just compensation occurred.

90.     This claim is ripe without exhaustion of state compensation remedies or lack of subject matter jurisdiction for prudential reasons because the State of Michigan's courts recently and clearly failed to recognize such a taking as existing as a matter of state law and failed to address a taking under the Fifth Amendment of the U.S. Constitution; and only applied the property right to surplus funds generated by a tax auction and thus has not provided an adequate reasonable process for obtaining return of surplus equity after a tax foreclosure.

91.     It is the policy, custom, and/or practice of Defendants Wayne County and Taylor and the named officials and/or its final policymaker to utilize MCL § 211.78m to deprive Plaintiff's and putative class members of their property of equity and/ or surplus funds a taken from them without just compensation. This draconian policy and conduct are sufficient to impose damages and other relief pursuant to *Monell v New York City Department of Social Services* and its progeny.

92.     Plaintiff and the putative class members continue to suffer great and material damages pursuant to 42U.S.C. § 1983.

93.     Plaintiff and putative class members have and/or be entitled to an award of damages as result of Defendants' violation of their rights under the United States Constitution.

18

## COUNT II
## POST TAKING CLAIM FOR JUST COMPENSATIONFOR
## JUST COMPENSATION UNDER THE FIFTH AMENDMENT
## INVERSE CONDEMNATION
## (AGAINST WAYNE COUNTY, TAYLOR, SOLLARS AND BAUM ONLY)

94.     Plaintiff repeats, realleges and reincorporates all preceding paragraph

herein by reference.

95.     The Fifth Amendment to the United States Constitution provides in

pertinent part that:

> ".... nor shall private property be taken for public use, without just
> compensation" U.S. Const., Amend. V said constitutional prohibition
> is known in jurisprudentially as the "Takings Clause" of the United
> States Constitution.

96.     The Takings clause is applicable as to all states of United States and by

extension to all political subdivisions, instrumentalities, counties, and cities.

97.     The principles against public policy as it was used to orchestra a public

corruption scheme embodied by the Takings Clause is to prohibit the government

from mandating that a few people solely bear a disproportionate share of the public

burden which shall be borne by the public as a whole.

98.     MCL § 211.78 by its terms, as it disregards surplus equity or funds,

amounts to a taking of private property for public use without just compensation.

99.     MCL § 211.78m has been abrogated by the legislature because it was

unconstitutional.

100.    Even before it was unconstitutional it required a "public purpose."

19

101.   In this case its utilization was void against public policy as it was used as part of a public corruption and bribery conspiracy.

102.   A legislature cannot constitutionally enact a law that it calls a tax statute which on its face effects a taking of private property without just compensation. *Cf. Acker v Commissioner of Internal Revenue,* 258 F. 2d 568 (6th Cir. 1958), *aff'd* 361 U.S. 87 (1959).

103.   Plaintiff and the putative class members have an interest in the windfall for which the properties were sold above the amount of the delinquent taxes.

104.   Neither Defendants Wayne County Treasurer nor Taylor offered to pay in advance of the taking(s), nor contemporaneously therewith, nor at any time thereafter, Plaintiff or putative class members just compensation for said taking(s).

105.   Neither Plaintiff nor putative class members have been provided by Wayne County Treasurer or Taylor any procedure of any kind, and therefore no adequate procedure whatsoever, to seek just compensation for said taking(s), and absolutely no procedure or remedy exists under the GPTA, or any Michigan Statute, for Plaintiffs and Class Members, to obtain just compensation for said takings within an inverse condemnation proceeding provided for and allowed by State law.

106.   Plaintiff's and putative class members' claims of inverse condemnation under the Takings clause are mature and ripe.

107.   By means of the premises, Plaintiff and the putative class members have suffered great and material damages and the Takings Clause requires Wayne County and Taylor, to pay Plaintiff and the putative class members money damages tantamount to and consisting of just compensation for the taking(s) of their private property for public use.

108.   In material part, 28 U.S.C. § 2201 (a) provides, that " In a case of actual controversy within its jurisdiction …. . .any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

## COUNT III
## ACTION TO QUIET TITLE

109.   Plaintiffs incorporate and re-allege all preceding paragraphs as if the same were entirely set forth herein.

110.   Plaintiffs are the owners of the Property and hold the Property in fee simple.

111.   Defendants' claims of lien and or claim of interest including title on the Properties are improper and must be discharged as a matter of law.

112.   Defendants' claims of title were obtained by fraud and fraudulent deeds.

113.   Plaintiffs' ownership, title and right to possession of the Property are superior to the claims and interest of the Defendant.

114.   Under MCL § 600.2932, plaintiffs are authorized to commence legal action against any such persons who claim or might claim an inconsistent interest with Plaintiffs are entitled to remove all doubts as to their title and right to possession of the Property, or any portion thereof, Caused by the actions of Defendant.

115.   Without the interpretation of this Honorable Court, there remains a cloud on the title of the portion of the Property due to the actions of Defendants, all to the injury of the true owner, being Plaintiff and the putative class members.

116.   Plaintiff has attached Statement of Title (Exhibit 1).

117.   Plaintiff relies on evidence that she has funded improvements, made arrangements on utility bills, checked periodically on the subject property, and paid for maintaining the subject property.

WHEREFORE, Plaintiff respectfully requests this Honorable Court to enter judgment in their favor, and declare that Plaintiff and putative class members have sole and exclusive rights to the use and possession of their respective properties in its entirety, in fee simple, free and clear of any lien or encumbrance of Defendants, and that title to the Property is forever quieted in Plaintiff's favor against all persons in the world including Defendant, and further award Plaintiff and putative class members damages including costs (general and special and exemplary), interest,

actual attorney fees in an amount deemed just and equitable by this Honorable court, and grant any other relief deemed just and equitable by this Honorable Court.

**COUNT IV**
**CIVIL DAMAGES UNDER THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") 18 U.S.C.§ 1961, *ET SEQ.* (AGAINST SOLLARS, BAUM, SHADY, ALTOON, RT, TAYLOR SOUTH, TAYLOR REHAB AND TAYLOR TWO ONLY)**

118.   Plaintiffs repeat, reallege and reincorporate all preceding paragraph herein by reference.

119.   This Court has jurisdiction over RICO civil violations.

120.   Sollars, Baum, Shady, Altoon and RT, Taylor South, Taylor Rehab and Taylor Two ("RICO Defendants") have utilized the governmental entity of Taylor to participate in a pattern of racketeering activity affecting interstate commerce, including numerous and continuing predicate acts during the past two years.

121.   Sollars, Baum, Shady, and Altoon have utilized RT Taylor South, Taylor Rehab and Taylor Two to participate in a pattern of racketeering activity, affecting interstate commerce, including numerous and continuing predicate acts during the past two years.

122.   Sollars has violated 18 USC § 1951 by using his office to conspire and participate in a scheme using both Taylor and RT as an enterprise engaging in a pattern of racketeering. Sollars used his official office of Mayor of Taylor to obtain payment he was not entitled.

23

123.   Defendant Baum has violated 18 USC § 1951 by using his office to conspire and otherwise participate in a scheme using both Taylor and RT as an enterprise engaging in a pattern of racketeering. Sollars and Baum were bribed and received payments the was not entitled.

124.   Taylor and RT are continuing enterprise as defined in 18 USC § 1961.

125.   Baum was responsible for legal compliance as Community Development Director of Taylor.

126.   All RICO Defendants engaged in a pattern of racketeering activity by participating in a scheme to strip the equity of delinquent taxpayers, who were on installment payment plans or otherwise delinquent in payment of their property taxes.

127.   Plaintiff and putative class members further allege that Defendants did commit two (2) or more of the offenses itemized above in a manner which they conjured and premeditated a scheme to threaten Plaintiffs and Class Members with continuity, i.e., a continuing threat of their respective racketeering activities in violation of the RICO law at 18 USC § 1962(b).

128.   Sollars and Baum wrongfully used their offices and implemented the scheme under color of official right and title.

129.   Sollars and Baum have taken bribes and abused their power under the GPTA for personal economic gain and to augment their governmental powers.

130. The predicate acts are in violation of 18 USC § 1951 by RICO Defendants and form the basis for a civil RICO action.

131. The predicate acts include mail fraud, wire fraud and misuse of public funds.

132. The predicate acts of using governmental power are continuing and occurred at least 200 times.

133. The pattern of racketeering activity consists of usurping the powers granted to Taylor under MCL § 211.78m and bestowing the spoils upon the RICO Defendants to enhance their power, obtain economic advantage, and favors amounting to graft.

134. RICO Defendants conspired to engage and participate in the equity stripping scheme.

135. There was a *quid pro quo* understanding between Sollars, Baum, Shady and Altoon that they would personally from transferring over 200 pieces of real estate.

136. Sollars, Shady, and Baum engaged in a conspiracy which violated 18 U.S.C. § 1962(c) by engaging in a scheme that conducted a pattern of racketeering activity affects interstate commerce.

137.   At various times and places, RICO Defendants did also conspire to conduct and participate in said RICO enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) and (d).

138.   RICO Defendants did not administer their respective offices to ensure the use of the Wayne County Treasurer's power under the GPTA to convey property by use of the right of first refusal granted to Taylor (pursuant to MCL § 211.78m) was used for "Public Purpose."

139.   The scheme which involves over 20 million dollars of real estate affects interstate commerce.

140.   RICO Defendants knew that their acts would remove the subject properties from the tax rolls of Taylor for the gain of RICO Defendants.

141.   The RICO Defendants conspired to conduct an enterprise through a pattern of racketeering activity.

142.   Each individual RICO Defendant agreed to join in the conspiracy and conduct the predicate acts.

143.   RICO Defendants joined and actively participated in the continuation of the enterprise.

144.   The injury to the victims was caused directly by the conduct of the RICO Defendants.

145.   RICO Defendants should pay to Plaintiff and putative class members treble damages, under authority of 18 U.S.C. § 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. §§ 1962(b)-(d), according to the best available proof.

146.   Plaintiff and putative class members should be granted such other and further relief as this Court deems just and proper, under the circumstances of this action.

147.   Plaintiff and putative class members have been damaged by the conduct of the RICO Defendants and seek recovery of treble damages pursuant to 18 U.S.C. § 1964(c).

148.   Plaintiff and putative class members relied on the false statements, regarding the scheme, which were transmitted through the mail and electronic commerce.

149.   The RICO Defendants conduct has caused Plaintiff and putative class members economic and non-economic damages which are compensable under 18 U.S.C. § 1964.

150.   There were email correspondence and mail that contained misrepresentations and false statements between RICO Defendants which effected and was transmitted through interstate commerce on numerous occasions and continues to this day. RICO Defendants should pay to Plaintiff and putative class

members all damages sustained by Plaintiff and putative class members in consequence of RICO Defendants' violations of 18 U.S.C. §§ 1962(b)-(d), according to the best available evidence.

## COUNT V
## UNJUST ENRICHMENT
## (AGAINST ALL DEFENDANTS EXCEPT THE HEFNERS)

151. Plaintiffs repeat, reallege and incorporate herein by reference all prior paragraphs.

152. Defendant has received the benefit of substantial Equity from Plaintiffs and the putative Class Members.

153. Indeed, Defendant paid $10.00 for property, and then sold it at or near fair market value.

154. Defendant only obtained these properties for $10.00 because City of Taylor exercised a statutory right of refusal and allowed Defendant to avoid an auction to acquire these properties, which Defendant would have paid significantly more for at auction.

155. Under these circumstances, it would be inequitable for Defendants to retain the Equity which they have received from Plaintiffs and the putative Class Members.

## COUNT VI
## FRAUD-FRAUDULENT DEED
## (ALL DEFENDANTS EXCEPT THE HEFNERS)

156.   Plaintiff repeats, realleges and reincorporates all preceding paragraphs herein by reference.

157.   Taylor obtained over 200 properties by a fraudulent tortious scheme of accepting bribes from Defendants and Developers and businessmen.

158.   Public officials and government Defendants owed a duty not to strip the Plaintiff's and putative class members' real estate equity for personal profit.

159.   The conduct of Defendants was fraudulent and tortious.

160.   The deeds utilized to defraud Plaintiff and putative class members were fraudulent.

161.   It is black letter law that one cannot obtain good title through a fraudulent deed.

162.   Plaintiff and the putative class members were the victims of fraud.

**COUNT VII**
**CIVIL CONSPIRACY**
**42 USC § 1983**
**(AGAINST SOLLARS, BAUM, SHADY AND ALTOOON)**

163.   Plaintiff repeats, realleges and incorporates herein by reference all prior paragraphs.

164.   The GPTA granted Taylor the right first of refusal to purchase the tax-foreclosed properties of Plaintiff and the putative class members.

165.   Commencing in 2015, Sollars and Baum conspired to sell foreclosed properties to private purchasers.

29

166.   Following the statutory tax-foreclosure date of March 31, a list of tax-foreclosed properties is generated and distributed by Wayne County.

167.   Sollars, Baum, Altoon and Shady obtained and reviewed these lists to determine which properties to purchase.

168.   Sollars and Baum convinced Taylor City Council to utilize its statutory first right of refusal for those properties desired by conspirators and pay the minimum bid. Otherwise, Taylor South and Rehab Two would have to obtain those properties at auction, which would cost more than the minimum bid. After the recent amendment to the GPTA, Taylor would have to pay the greater of the minimum bid or the fair market value.

169.   After Taylor purchased the properties and obtained title from Wayne County, Taylor transferred title of those same properties to the RT, Taylor South, and Taylor Rehab for $10.00, far less than fair market value.

170.   RT, Taylor South, and Taylor Rehab would then and sell those homes for fair-market value, reaping a significant profit which includes Plaintiff's and putative class members' equity.

171.   Sollars and Baum used their positions as Mayor and Community Development Director of Taylor in furtherance of this scheme, from which they benefitted personally and professionally.

172.   As set forth above, Defendants conspired to act under color of law to obtain Plaintiff's and putative class members' equity.

173.   The exercise of Taylor's right of first refusal to obtain Plaintiff's and putative class members' equity was the product of a corrupt conspiracy.

174.   Any alleged "public purpose" from Defendants is pretextual to the real purpose – personal profit.

175.   As set forth above, the conduct of Taylor, Sollars, and Baum caused the deprivation of the Plaintiff's and putative class members' right to their equity.

176.   Plaintiff's and the putative class members' rights to their equity are well established.

177.   As a direct and proximate result, Plaintiff and the putative class members have been injured and have suffered damages.

178.   Plaintiff and the putative class members do not have an adequate remedy at law except as asserted in this Complaint.

**COUNT VIII**
**DECLARATORY RELIEF**
**(AGAINST ALL DEFENDANTS EXCEPT THE HEFNERS)**

179.   Plaintiff repeats, realleges and incorporates herein by reference all prior paragraphs.

180.   An actual controversy exists between Plaintiff and putative class members and Defendants regarding the administration of the GPTA tax foreclosure.

181.   Plaintiff and putative class members are entitled to a declaration that the failure of the GPTA and Michigan law to provide delinquent taxpayers a basis for and a method to recover the equity in their homes after they are taken is a violation of their rights to just compensation and equal protection.

182.   Plaintiffs and putative class members are entitled to declaratory judgment that Taylor cannot exercise its right of first refusal without paying fair-market value for the property and reimbursing the property owners for their equity above any tax delinquency owed.

183.   Plaintiffs and putative class members seek a declaratory judgment that Southfield cannot treat property owners who face tax foreclosure in 2021 more favorably than the similarly situated property owners who were foreclosed in earlier years before recent changes to MCL § 211.78m and that the *Rafaeli* decision is retroactive.

## COUNT IX
## SUBSTANTIVE DUE PROCESS
## (AGAINST TAYLOR AND WAYNE COUNTY)

184.   Plaintiff repeats, realleges and incorporates herein by reference all prior paragraphs.

185.   Defendants, acting through their official capacities and pursuant to customs, policies and / or practices, denied Plaintiff and the putative class members their constitutional right to fair and just treatment during executive acts and

deceptive communications from site officials who intentionally acted and deprived Plaintiff and the putative class members of their property.

186. The evidence of the denial of a fair and just treatment as required by the Fourteenth Amendment of the United States Constitution is incumbent that government officials including named Defendants herein engaged in unconscionable acts against Plaintiff and the putative class members, treating them with fundamental unfairness.

187. Plaintiff and the putative class members were led to believe by Wayne County and Taylor, through their respective officials, that they had the ability to maintain their property rights.

188. Taylor and Wayne County have violated the Fourteenth Amendment of the United States Constitution, as implemented through 42 U.S.C. § 1983.

189. Wayne County and Taylor, through their officials, engaged in conduct that "shocked the conscience" in the constitutional sense.

190. Defendants' conduct constitutes a conflict of interest and has no rational basis violating Plaintiff and putative class members' rights to substantive due process.

191. The surplus equity and or equity in justice and equity belongs to the Plaintiff and the putative class members.

192.    Plaintiff and the putative class members have been damaged by their loss of surplus equity and or equity.

## **RELIEF REQUESTED**

Wherefore, Plaintiff and the putative class members respectfully that this Court:

a)    Enter an order certifying this case as a class action;

b)    Enter an order declaring the conduct of Defendants as unconstitutional under the United States and Michigan Constitutions;

c)    Enter an order for an award of full compensatory damages for those injuries and damages sustained by Plaintiffs and putative Class Members, including disgorgement of Equity for each respective property;

d)    Enter an order for additional damages and/or compensation to reach an amount equaling 125% of the property's fair market value if this Court determines that private property consisting of an individual's Equity was taken for public use pursuant to Article X, Section 2 of the Michigan Constitution;

e)    Enter and order for damages pursuant to 42 USC §§ 1983 and 1988;

f)    Enter an order for an award of interest as provided for in *Knick v. Twp. of Scott*;

g)    Enter an order for an award of reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and all other applicable laws, rules, and statutes.

h)    Enter an order for an award of consequential, nominal, treble and/or punitive damages as appropriate by statute, law, and equity pursuant to 42 U.S.C. § 1983 and 1988, and 18 U.S.C. § 1964.

i)    Enter an order for an award of actual reasonable attorney fees and litigation expenses including costs, interest pursuant to 42 U.S.C. § 1988 and all other applicable laws, rules, or statutes.

j)    Because the deeds were fraudulent either rescind the conveyances or pay consequential and exemplary damages

k)    Enter an award for exemplary and punitive damages;

l)    Enter an order for declaratory judgment that Defendants' conduct is unlawful under the GPTA;

m)    Enter an order that the 2021 revisions to the GPTA are retroactive;

n)    Enter an order for all other such legal and equitable relief that this Court deems proper and just.

## **JURY DEMAND**

For all triable issues, a jury is hereby demanded.

35

Respectfully submitted,

SMITH LAW GROUP PLLC

/s/ Scott F. Smith (P28472)
By: SCOTT F. SMITH (P28472)
*Attorney for Plaintiffs*
30833 Northwestern Hwy., Suite 200
Farmington Hills, MI    48334
T: 248-626-1962
Smithsf.law@gmail.com