UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY FLUMMERFELT, *et al.*,
    Plaintiffs,
    v.

CITY OF TAYLOR, *et al.*,
    Defendants.
_____/

Case No.: 22-10067

Judith E. Levy
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION
MOTIONS TO DISMISS (ECF Nos. 29, 46, 48, 66)**

## I.  PROCEDURAL HISTORY

Plaintiffs Judy Flummerfelt, Frances Ridenour, Anthony Hamilton, and

Holly Hamilton, on behalf of themselves and those similarly situated in the City of

Taylor, filed suit alleging violations of the United States Constitution and

Michigan law on January 11, 2022.  They later amended their complaint.  (ECF

No. 6).  The complaint arises out of the tax foreclosure of the named plaintiffs'

homes located in the City of Taylor.  They allege that, through illegal conspiracies,

they were denied the surplus value or equity in their foreclosed homes.  The

defendants are the Wayne County Treasurer and the City of Taylor, the

government entities involved in the foreclosure and first sale of the properties.

Plaintiffs also sue former Taylor mayor, Richard Sollars; Taylor Community

Development Manager, Jeffery Baum; Shady Awad and his real estate businesses,

Realty Transition LLC ("RT") and Taylor Rehab LLC ("Taylor Rehab") (collectively, the "Awad defendants"); and Hadir Altoon and his real estate businesses Taylor South Investment LLC ("Taylor South") and Abigail Investment LLC "Abigail").  Plaintiffs allege violations of the Fifth and Eight Amendments, due process, and Michigan law.

Taylor, Wayne County, the Awad defendants, and Sollars moved to dismiss the amended complaint.  (ECF Nos. 29, 46, 48, 66).  On order of the Court, the parties, except Sollars, filed supplemental briefing regarding the recent Sixth Circuit decision, *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022).  (ECF Nos. 71-73, 76-78).  This matter is now ready for report and recommendation.

For the reasons below, the undersigned recommends that the City of Taylor, the Awad defendants, and Sollars' motions to dismiss be **GRANTED** and Wayne County's motion to dismiss be **GRANTED IN PART AND DENIED IN PART**.

## II.   BACKGROUND

As mentioned, this case arises out of the events following the tax foreclosures of Plaintiffs' properties in Taylor, Michigan.  Michigan's General Property Tax Act ("GPTA") provides the statutory process by which a governmental entity in the state collects unpaid and delinquent real property taxes through property forfeiture and foreclosure.  Under the Act, at the time of the events alleged, if property taxes remained unpaid in the prescribed twelve-month

period, the property was forfeited to the county treasurer.  M.C.L. §§ 211.78a(2),

211.78g(1).  This forfeiture allowed the Foreclosing Governmental Unit ("FGU")

to petition for a judgment of foreclosure on the property.  The FGU was not,

however, required to seek foreclosure.  If it did not, the State could then seek

foreclosure.  M.C.L. §§ 211.78(6); (3)(a).  If, during the foreclosure process, the

owner did not redeem the property, the FGU would obtain a court order vesting

absolute title to the property in itself.  M.C.L. § 211.78k(5)(a).  Michigan then had

the option to purchase the property at the greater of either the minimum bid (the

amount of delinquent taxes, interests, and costs) or the fair market value.  If the

State declined to purchase the property, the city in which the property was located

could purchase the property for the minimum bid.[1]  M.C.L. § 211.78m(1).  After

purchasing the property, the state or local government could then sell the property

at a public auction.  Important here, the former owner had no right to any of the

proceeds, no matter the sale price.  *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429,

434 (2020).

Wayne County acted as the FGU pursuant to the GPTA.  After Plaintiffs did

not redeem their properties, title to the properties was vested in the County.  The

State elected not to purchase the properties.  The City of Taylor then purchased the

---

[1] In the amended version of the statute, the city must now pay the greater of the minimum bid or fair market value.

properties for the minimum bid, or the amount of the tax delinquency plus costs. The city later sold the properties variably to Awad and Altoon, who then resold them earning significant profit.  Plaintiffs realized none of the profits.

Plaintiffs allege the defendants conspired to deprive them of the surplus value or equity in the properties.  According to Plaintiffs, in 2015, Taylor created a program called the Right of First Refusal program ("ROFR program").  Under this program, Taylor exercised its ROFR to acquire tax-foreclosed properties in Taylor from Wayne County under the GPTA.  Taylor then selected a developer to acquire, redevelop, and resell the properties.  (ECF No. 6, PageID.76-77).  Sollars allegedly had control and influence over the ROFR program, including which developers would be chosen to participate.  In July 2015, Sollars recommended to Taylor's City Council that Awad's company, RT, be awarded all tax-foreclosed properties in the city.  Soon after, Awad was awarded all 95 tax-foreclosed properties in the ROFR program.  (*Id.* at PageID.77-78, ¶ 49).  In return, Sollars received tens of thousands of dollars in cash and services from Awad.  This scheme allegedly continued for years.  (*Id.* at PageID.78, ¶ 50).  Similarly, from September 2017 through January 2019, Sollars received kickbacks from defendant Altoon, who acquired tax-foreclosed properties and provided Sollars substantial sums of money to his campaign fund.  (*Id.* at PageID.79, ¶ 54).

Flummerfelt's property accrued around $15,000 in unpaid taxes.  After the foreclosure, the City conveyed the property by quitclaim deed to RT for $10.00. RT later transferred the property to Taylor Rehab for $10.00.  The property was sold nearly two years later for $165,000.  (*Id.* at PageID.89-90).  Ridenour's property accrued $2,904.87 in delinquent property taxes.  After the County foreclosed on the property and Taylor acquired it for the minimum bid, Taylor conveyed the property to RT by quitclaim deed for $10.00.  (*Id.* at PageID.90). Plaintiffs do not indicate that the Ridenour property was sold again.  The Hamilton property accrued $3,396.09 in delinquent taxes.  Taylor conveyed the property to RT by quitclaim deed for an unspecified amount.  The Hamilton property was sold by RT for $55,000 about three years later.  (*Id.* at PageID.90-91).

Awad and Altoon pleaded guilty to federal charges of conspiracy to commit bribery concerning programs receiving federal funds under 18 U.S.C. §§ 371 and 666(a).  (*Id.* at PageID.85, ¶¶ 46-80).  Sollars was awaiting trial related to the same scheme at the time the complaint was filed.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

Defendants bring their motions pursuant to Rule 12(b)(6).  When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true."  *Keys v.*

*Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B.    Discussion

      1.    City of Taylor and Wayne County's Motions to Dismiss (ECF Nos. 29, 46)

           a.    Fifth Amendment Takings Claim

Plaintiffs sue Wayne County[2] and Taylor for the improper taking of their properties without just compensation. They assert they have a property interest in the surplus value or equity in their properties that was illegally withheld from

---

[2] Defendant Wayne County Treasurer is the only County defendant on the docket. The treasurer argues that he is immune from suit, both in his individual and official capacities, that the County alone is the proper defendant, nevertheless Plaintiffs did not name the County. (ECF No. 73, PageID.715-16). The amended complaint caption names "Wayne County," not the treasurer, and throughout discusses Wayne County as the defendant. (ECF No. 6). While the CM/ECF case caption lists the treasurer as the Wayne County defendant, Wayne County is the proper defendant.

them.  (ECF No. 6, Count I).  The Fifth Amendment's Takings Clause provides

that "private property" shall not "be taken for public use, without just

compensation."  U.S. Const. amend. V.

*Hall v. Meisner* dealt with similar claims against similar defendants.  There,

the plaintiffs sued Oakland County and the County Treasurer, the City of

Southfield, city officials, and a for-profit neighborhood revitalization company.

Those plaintiffs lost their properties much like Plaintiffs here—they became

delinquent in property taxes in amounts far less than the market value of their

homes, Oakland County obtained fee simple title, the City of Southfield purchased

the properties for the amount of the unpaid taxes plus costs, the city transferred the

deeds to the revitalization company for a nominal amount, and the company

eventually sold the properties for significant profit.  The plaintiffs were not

compensated for the surplus value of their homes.  51 F.4th at 189.

Two of the court's conclusions affect this case.  One is that property owners

retain a property interest in the surplus value of the property that is not

extinguished when the property is sold to the City for the "minimum bid."  *Id.*at

195.  Thus, plaintiffs here can maintain a takings claim for the surplus value of

their properties.

Second, since "the act of taking is the event which gives rise to the claim for

compensation, . . . the County alone is responsible for the taking of the plaintiffs'

property" under the United States Constitution.  *Id.* at 196 (internal citation omitted).

Plaintiffs appear to concede that Wayne County alone is the proper defendant for this claim.  (*See* ECF No. 76).  Thus, this claim should be dismissed against the City of Taylor.

Wayne County argues that this claim is untimely because it was not filed within three years of Wayne County obtaining title to the properties.  (*See* ECF No. 73, PageID.714-15).  Plaintiffs concede that *their* claims are time barred, but assert that they intend to move to add plaintiffs to the putative class against who have had their equity taken by Wayne County within the last three years.  (ECF No. 78, PageID.736).  To date, Plaintiffs have not moved to add plaintiffs, and they have not asked the Court to stay a ruling on this claim.  Given their concession that their claims are beyond the statute of limitations, the undersigned suggests the Fifth Amendment takings claim against Wayne County be dismissed.

b.    Inverse Condemnation under Michigan Law

The Hamilton Plaintiffs[3] sue Wayne County and Taylor for violating the Michigan Constitution for inverse condemnation.  (ECF No. 6, Count II).  "Inverse condemnation is 'a cause of action against a governmental defendant to recover the

---

[3] Remaining named Plaintiffs withdrew their inverse condemnation claim.  (ECF No. 53, PageID.425).

value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.'" *Mays v. Snyder*, 916 N.W.2d 227, 271 (Mich. Ct. App. 2018) (quoting *In re Acquisition of Land-Virginia Park*, 121 Mich. App. 153, 158–159, 328 N.W.2d 602 (1982)).

Prior to supplemental briefing on *Hall*, Taylor argued the inverse condemnation claim fails for two reasons. First, because Plaintiffs do not have a cognizable property interest in surplus value or equity. It is well-established that property rights are created by state law. *See Hall*, 51 F.4th at 189 (quoting *Phillips v. Washington Legal Found.*, 524 U.S. 156, 164 (1998)). Taylor asserts that the property interest recently identified by the Michigan Supreme Court in *Rafaeli, LLC v. Oakland Cnty.*, does not cover what the Hamiltons contend was taken here. 952 N.W.2d 434 (Mich. 2020). In *Rafaeli*, the court found a property interest in surplus proceeds resulting from a post-tax-foreclosure public auction. *Id.* at 483-84, n. 134. It did not find a property interest in the context presented here—equity remaining after the property is sold by a third party, not at a public auction. For this reason, Taylor argues the Hamiltons do not have a property interest in surplus value or equity because there was no tax-foreclosure public sale. (ECF No. 29, PageID.190-91).

Next, it contends that since the city did not realize any profits from the property, it did not take property for which it could be liable.  Instead, Wayne County was the FGU.  The city merely purchased the property for the delinquent tax amount and deeded it to a developer.  (*Id.* at PageID.191).

Plaintiffs insist that the city conspired with the other defendants to prevent them from receiving the fair market value of their property by declining to sell the property at public auction, otherwise there would have been proceeds to which they are entitled.  (ECF No. 53, PageID.426-27).  They support their argument with a historical review of how the law has treated compensation for equity.  (*Id.* at PageID.427-31).

They next argue that M.C.L. § 211.78m, as amended, protects their property interest, and M.C.L. § 211.78(t) provides for recovery of their equity.  Section 211.78m vests a property right in surplus proceeds after foreclosure.  Section 211.78(t) states that for properties sold before July 18, 2020 under section 211.78m, like Plaintiffs, the former owners are entitled to the fair market value if the Michigan Supreme Court rules that *Rafaeli* applies retroactively and notice of intention is filed.  (*Id.* at PageID.432-33).  They acknowledge that the Michigan Supreme Court has yet to rule on retroactively applying *Rafaeli*, but since the Michigan Court of Appeals and a court in this district have ruled that it is retroactive, they assert they are entitled to relief.  (*Id.* at PageID.433-35).

In its supplemental brief, Taylor maintains it should be dismissed pursuant to the unpublished companion decision in *Hall v. Meisner*, 2022 WL 7478163 (6th Cir. Oct. 13, 2022).  (ECF No. 71, PageID.683).  There, the court affirmed the dismissal of all claims against the City of Southfield and others except Oakland County because the actions of those defendants came after Oakland County took title to the properties.  Taking title "was the action that caused the injury giving rise to this suit; what happened afterward had no effect upon their legal rights." *Hall*, 2022 WL 7478163, at *1.  Among the claims dismissed against the City of Southfield was a takings claim under the Michigan Constitution.

In response, Plaintiffs assert that the inverse condemnation claim is viable because the published *Hall* decision remanded the Michigan law claim against the county with instructions for the district court to abstain from adjudicating it. According to Plaintiffs, the court did not hold that state claims could not be brought in those circumstances.  (ECF No. 76, PageID.722).  Plaintiffs did not address the dismissal of the City of Southfield in the unpublished *Hall* opinion.

This claim against Taylor should be dismissed.  After a thorough historical analysis on the longevity of a property owner's equitable title, the Sixth Circuit concluded that equitable title is not extinguished when the County takes absolute title, and that it is the County's taking that injured property rights.  It specifically stated that the events after the County takes title have no impact on the former

owner's legal rights.  It follows that the City's acquisition of title, and the events that followed, did not effect Plaintiffs' legal rights to the properties any further. Without authority establishing otherwise,  it appears a claim for vindication of property rights is properly brought against the County, not the City that later acquired the properties.[4]  This claim, and any other claims against the City of Taylor, should be dismissed.

For its part, Wayne County initially argued, like Taylor, that the takings claims fail because there were no surplus proceeds from a tax-foreclosure sale. (ECF No. 46, PageID.323-24).  The County also argued that *Rafaeli* is prospective, and bars the relief Plaintiffs seek here.  (*Id*. at PageID.326-32).  In its supplemental brief, Wayne County contends this claim must be dismissed pursuant to *Hall* because *Hall* held that the only viable claim is a Fifth Amendment takings claim and it already took title to the Hamiltons' property, so the inverse condemnation claim should be dismissed.  (ECF No. 73, PageID.713-14).  Plaintiffs assert that *Hall* does not limit claims in tax foreclosure cases to only the Fifth Amendment takings clause.  They acknowledge that in *Hall*, the court directed the district court

---

[4] It is true that *Hall* directed the district court to abstain from ruling on the Michigan constitutional claim.  Even so, that directive from the Sixth Circuit related only to the claim as against Oakland County, not the city defendant.  It did not address the Michigan claim against the other defendants.  In the unpublished decision, the Sixth Circuit addressed the remaining claims, including Michigan claims, against the remaining defendants, including the city defendant, and held that the claims should be dismissed because the County's taking caused the injury.  The undersigned thus does not read the published *Hall* decision is mandating that the Michigan claim go forward against the City of Taylor.

to abstain from ruling on the Michigan inverse condemnation claim, but it did not

hold that such claims could never proceed.  (ECF No. 78, PageID.737).

*Hall* makes clear that there can be a claim for surplus proceeds, so Wayne

County's first argument is unavailing.

As for application of *Rafaeli* here, there is some ambiguity.  The amended

GPTA clearly that states for properties sold before July 18, 2020, like Plaintiffs,

they are entitled to the fair market value if the Michigan Supreme Court rules that

*Rafaeli* applies retroactively and notice of intention is filed by the owner.  M.C.L.

§ 211.78(t).  The Michigan Supreme Court has made no such ruling.  The

Michigan Court of Appeals, however, has since ruled that *Rafaeli* is retroactive

because that case did not announce new law.  Rather, it "returned the law to that

which was recognized at common law and by the ratifiers of the Michigan

Constitution of 1963."  *Schafer v. Kent Cnty.*, 2022 WL 4389922, at *4 (Mich. Ct.

App. Sept. 22, 2022).  Similarly, a court in this district held that *Rafaeli* applies

retroactively despite the amended GPTA.  *Bowles v. Sabree*, 2022 WL 141666, at

*4 (E.D. Mich. Jan. 14, 2022).  At this stage of the litigation, it is not clear that

Plaintiff's are precluded from the relief they seek under the GPTA even though the

Michigan Supreme Court has not ruled on *Rafaeli*.

Next is Wayne County's assertion that *Hall* held that the only viable claim in

these cases is a Fifth Amendment takings claim.  While that court affirmed

dismissal of the plaintiffs' Fifth Amendment inverse condemnation claim and allowed the Fifth Amendment takings claim to go forward, 51 F.4th at 196, the court did not rule that only viable claim is a Fifth Amendment takings claim at the expense of a Michigan law inverse condemnation claim.  In addressing the plaintiffs' Michigan constitutional takings claim in *Hall*, the court vacated the district court's dismissal of the claim against the county defendant and remanded it with instructions to abstain from adjudicating it under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500-01 (1941).[5]  *Id.* at 196.  The Court did not dismiss the claim on the ground that only the Fifth Amendment takings claim was a viable claim.

Wayne County contends that the inverse condemnation claim must be dismissed because it already took title to the property.  It cites *Hall* for this proposition, but *Hall* was addressing the federal inverse condemnation claim, not the Michigan counterpart.  The County did not cite state law to support its contention.[6]

Last, the County asserts that the statute of limitations ran before the Hamiltons filed suit, and thus their claims should be dismissed.  (*Id.* at

---

[5] Neither party argued that the Court should abstain from ruling on the claim.

[6] It appears an inverse condemnation claim in this context can be viable.  *See Rafaeli*, 505 Mich. 42, in which the Michigan Supreme Court addressed the plaintiff's inverse condemnation claim in the tax-foreclosure/surplus proceeds context.

PageID.332-33).  The Hamiltons argue that the applicable statute of limitations is six years from the date that Wayne County obtained titled to their property, or on July 24, 2024.  This lawsuit, in their view, is timely.  (ECF No. 54, PageID.474-75).  In reply, the County asserts that the six-year limitations period should not apply here because inverse condemnation claims typically result from a slowly-developing taking, not a one-time action like this case.  (ECF No. 60, PageID.528).  The County views this claim as coming under Michigan's GPTA, which carries a two-year statute of limitations, not the Michigan Constitution and its six-year statute of limitations for this claim.

Plaintiffs raised the inverse condemnation claim under the Michigan Constitution, not the GPTA.  The County does not disagree that the constitutional inverse condemnation claim carries a six-year statute of limitations.  Thus, the six-year period should apply here, and the claim is not time barred.

In sum, on the arguments presented, the undersigned suggests that the inverse condemnation claim remain against Wayne County.

c.    Federal Due Process Against Wayne County

Plaintiffs allege violations of federal substantive and procedural due process for the denial of the surplus value in their properties.  They assert that Wayne County took their property interests in surplus value or equity without just payment and without a direct condemnation process (substantive due process) and that there

15

was no procedure or process to secure the return of their property interests (procedural due process).

Wayne County argues that these claims must be dismissed because the Michigan Supreme Court in *Rafaeli* stated that only the Michigan Constitution and common law, not federal law, protects a former owner's property right to collect surplus proceeds from a tax-foreclosure sale.  For this reason, the County contends that all federal claims must be dismissed.  (ECF No. 46, PageID.324-25). Plaintiffs did not address their due process claims in response to Wayne County's motion to dismiss.  (ECF No. 54).  In their response, they explained that they agreed to dismiss the federal takings claims against Wayne County, but did not specify if this included the due process claims.  (*Id.* at PageID.453).  A fair reading is that Plaintiffs did not intend to dismiss the federal due process claims.  Neither Wayne County nor Plaintiffs addressed the due process claims in their supplemental briefs.  (ECF Nos. 72, 78).  But in their supplemental brief, relying on *Hall*, Plaintiffs reassert the federal takings claims against Wayne County.

It is not clear that *Rafaeli* forecloses federal due process claims.  *Rafaeli* recognized that the United States Constitution provides property owners a remedy when a tax-sale statute provides the owner an interest in the surplus proceeds, but Michigan's GPTA did not provide such an interest.  The court held that the Michigan Constitution protected a former owner's property right to collect surplus

proceeds from a tax-foreclosure sale.  505 Mich. At 473.  But the court did not

hold that there are no federal protections in cases such as this.  *Hall* expressly

found federal Takings Clause protections in similar circumstances.  In addition, the

federal due process claims in *Hall* were dismissed because the plaintiffs failed to

allege sufficient facts, not because federal due process claims cannot be raised in

this context.

At the very least, given the ambiguity in the briefing on the federal due

process claims, at this juncture they should not be dismissed.

### 2. Awad Defendants' Motion to Dismiss (ECF No. 48)

Plaintiffs allege that the Awad defendants (Awad, Realty Transition LLC

and Taylor Rehab LLC) engaged in a scheme with the City of Taylor, former

Mayor for the City of Taylor defendant Sollars, and former City of Taylor

Treasurer Jeffrey Baum to induce the city to exercise its statutory right of first

refusal to purchase tax-foreclosed homes for the minimum bid, or the amount of

unpaid taxes and fees, and avoid a public sale.  After Taylor obtained title to the

properties, it transferred them to one of the private defendants, which would then

sell it for its true market value and keep substantial profits.  In return for the

transfer of the properties, the individual defendants paid tens of thousands of

dollars in bribes and kickbacks to Sollars and Baum.  Other than Sollars, the

individual defendants had pleaded guilty to federal charges of conspiracy to

commit bribery concerning programs receiving federal funds at the time of Plaintiffs' complaint.  Plaintiffs sue the Awad defendants for violating RICO under 18 U.S.C. § 1962(c) and (d), civil conspiracy under § 1983, and unjust enrichment under Michigan law.

In their opening brief, the Awad defendants argue that both the RICO and conspiracy claims fail because they rest on Plaintiffs' assertion of a property right that is not recognized by state law—retention of surplus value or equity when the property is sold by a third party rather than at a public auction.  They also argue that the statute of limitations ran as to the Flummerfelt and Ridenour Plaintiffs on the RICO claim.  (ECF No. 48, PageID.367-76).  They assert that since the RICO and civil conspiracy claims should be dismissed, the Court should decline to exercise its discretion to hear a state-law claim.  (*Id.* at PageID.376-77). Alternatively, if the Court exercises supplemental jurisdiction over the unjust enrichment claim, the defendants maintain that the claim is barred by the statute of limitations.  They state that the GPTA provides a two-year limitations period from the date the judgment of foreclosure is effective to file an action for recovery of property interests, which occurred more than two years before this case was filed. (*Id.* at PageID.377-78).  Lastly, they argue that the claim fails because they did not receive a benefit from Plaintiffs.  (*Id.* at PageID.378-81).

Plaintiffs' theory of liability against the Awad defendants rests on the fact that their involvement with their properties and the City of Taylor prevented a public auction by the City from which they could have recovered surplus value. (ECF No. 55, PageID.488).  They maintain that they retained a property right in the surplus value or equity in their properties.  (*Id.* at PageID.489-93).  Just as they argued in response to Wayne County's motion to dismiss, Plaintiffs insist that *Rafaeli* is retroactive, and thus there is a statutory mechanism by which they can obtain the equity value.  (*Id.* at PageID.494-97).  As a result, Plaintiffs argue that they alleged damage to their properties when the Awad defendants conspired to use Taylor's right of first refusal program to prevent Plaintiffs from the surplus value or equity.  They argue the RICO claim is timely because the time began to accrue when they were injured by a RICO violation.  Their RICO claim is based on defendants conspiring to strip owners of their surplus value or equity.  Plaintiffs did not know about the conspiracy until December 18, 2019, when the federal government filed its indictment against Sollars, Baum, Awad, and Altoon.  Thus, they state that they had until December 18, 2023, to file the lawsuit, so the RICO claim is timely.  (*Id.* at PageID.497-98).

Plaintiffs insist their civil conspiracy claim is properly pleaded.  They contend that Awad defendants' argument that Plaintiffs lost their property interest when Wayne County took title is false.  Rather, they state that they lost their

surplus value or equity when Taylor failed to pay Wayne County the fair market value of their properties.  (*Id.* at PageID.498).  Plaintiffs argue their unjust enrichment claim carries a six-year statute of limitations and thus the claim is timely.  (*Id.* at PageID.501).  Lastly, they contend that a third party who indirectly receives benefits from a plaintiff can be unjustly enriched if there is evidence of misconduct or a scheme to unjustly enrich themselves.  Plaintiffs alleged wrongdoing by the Awad defendants to obtain the surplus value of Plaintiffs' properties.  (*Id.* at PageID.502-04).

The parties submitted supplemental briefing on the impact of the *Hall* decisions as ordered.  The Awad defendants insist that the claims be dismissed pursuant to the *Hall* decisions.  In the unpublished *Hall* decision, the court affirmed the dismissal of the City of Southfield and the corporation to which the city conveyed the properties, like the City of Taylor did with the Awad defendants. The Sixth Circuit affirmed their dismissal because "[t]he relevant actions of these defendants came after the County took absolute title to plaintiffs' homes.  That was the action that caused the injury giving rise to this suit; what happened afterward had no effect upon their legal rights."  2022 WL 7478163, at *1.  The Awad defendants rely on this statement to establish that Plaintiffs' injuries occurred when Wayne County took title to their properties; what happened afterward had no legal

impact on their property interests.  Thus, their actions cannot support the claims against them.  (ECF No. 72, PageID.708).

Plaintiffs insist that neither *Hall* opinion provides grounds to dismiss the Awad defendants because that case has different operative facts from this case, namely, there is criminal activity by the Awad defendants and Sollars and Baum. (ECF No. 77, PageID.729).  They also point out that the third parties who obtained the properties from the City of Southfield in *Hall* were quasi-governmental or associated with the government, unlike the Awad defendants.  They contend this difference is significant because the Sixth Circuit did not consider whether private individuals or entities with no legal ties to a governmental entity can be held liable for conspiring to deprive former property owners of their equity.  (*Id.* at PageID.729-30).  They also note that the plaintiffs in *Hall* did not raise RICO or civil conspiracy claims, and thus that case is irrelevant to those claims here.  (*Id.* at PageID.730-31).  Plaintiffs argue that the view that Wayne County's action to foreclose on the properties is the cause of the damage is "too narrow."  (*Id.* at PageID.731).  They maintain that defendants' tortious actions prevented their properties from being sold at auction, and therefore precluded surplus proceeds. But for their actions, the City would have sold the properties at auction and Plaintiffs could have received surplus proceeds.  (*Id.* at PageID.731-32).

To sustain the claims, both RICO and civil conspiracy require that the defendants have committed some act—a prior act (e.g., racketeering activity) or violation of the plaintiff's rights.[7]  The alleged wrongdoing here was scheming or conspiring to bribe Taylor officials to deed Plaintiffs' properties to them so they could sell the properties for significant profit, avoiding a public sale that would have resulted in surplus proceeds that Plaintiffs could claim.  Plaintiffs place the injury to their property rights after the Sixth Circuit did.  The Sixth Circuit held that the injury to tax-foreclosed plaintiffs occurs when the County takes absolute title to their properties, not when the city purchases the property for the amount of the tax delinquency, not when the city conveys the property to a third party for nominal value or no value, not when the third party obtains title and sells the property, and not when none of the proceeds from the third party's sale go back to

---

[7] 18 U.S.C. § 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).  A violation of the statute requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Racketeering activity consists of a number of criminal offenses, including bribery and accepting or soliciting bribes, which are alleged here. *See* 18 U.S.C. § 1961(1)(A).

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985).  To prevail on this claim, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted).

the former owner.  Plaintiffs ask the Court to find that their injury occurred when the City of Taylor deeded the properties to the individual defendants, through illegal means of bribery and kickbacks, and those third parties sold the properties and retained the profits.  Prevailing jurisprudence does not support this.

It is true that there are some factual differences between this case and *Hall*. Some defendants in this case have been criminally charged and sentenced for engaging in bribery and giving or receiving kickbacks to obtain title to tax-foreclosed homes.  And here the Awad defendants are not quasi-governmental. Plaintiffs insist these differences suggest that *Hall* does not apply.  The fact in *Hall* that the defendants were not engaged in criminal activity or that the third parties were quasi-governmental appears to have not influenced the court's conclusion that it was the county's taking title that injured the plaintiffs' property rights.  The court's holding was based on a through historical review of property rights— equitable title specifically—that lead the court to its conclusion.  Not the identity and actions of the parties after the county took title.

To say otherwise would be akin to extending the property right found in *Hall* beyond the point at which Wayne County took absolute title to Plaintiffs' properties.  Without authority to support such an extension, the undesigned declines to do so.  Thus, the claims against the Awad defendants should be

dismissed because they rest on a finding that Plaintiff's property rights were injured after the County took title.

3.      Defendant Sollars' Motion to Dismiss (ECF No. 66)

Despite the Order to do so, defendant Sollars did not submit a supplemental brief on the *Hall* decisions.  Yet he addressed *Hall* in his reply brief filed after the Order for supplemental briefing.  Plaintiffs did not file a supplemental brief in response to the reply nor move for leave to file a sur-reply, but they addressed similar arguments in response to the other defendants' supplemental briefs.

In his reply brief, Sollars' argument mirrors the Awad defendants'—*Hall* established that the injury to property rights occurred when Wayne County took title to the properties and what happened after that had no effect on Plaintiffs' legal rights.  Thus, Sollars argues the claims against him should be dismissed.  (ECF No. 70, PageID.670-71).

The analysis on the Awad defendants applies equally here.  As it stands, it does not appear Plaintiffs have a cause of action for loss property rights against anyone who took title to their properties after Wayne County.  The claims against Sollars should be dismissed.  In light of this conclusion, the undersigned will not address Sollars' other arguments for dismissal.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the City of Taylor, the Awad defendants, and Sollars' motions to dismiss (ECF Nos. 29, 48, 66) be **GRANTED** and that Wayne County's motion to dismiss (ECF No. 46) be **GRANTED IN PART, DENIED IN PART**, leaving the Michigan inverse condemnation and federal due process claims remaining against Wayne County.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  January 6, 2023.                    s/Curtis Ivy, Jr.
                                           Curtis Ivy, Jr.
                                           United States Magistrate Judge