UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY FLUMMERFELT, *et al.*,                    Case No. 22-10067

     Plaintiffs,                              F. Kay Behm
v.                                             United States District Judge

CITY OF TAYLOR, *et al.*,                      Curtis Ivy
                                               United States Magistrate Judge

     Defendants.
_____ /

**OPINION AND ORDER ACCEPTING IN PART AND MODIFYING
IN PART THE MAGISTATE JUDGE'S JANUARY 6, 2023
<u>REPORT AND RECOMMENDATION (ECF No. 79)</u>**

## I.     PROCEDURAL HISTORY

Plaintiffs Judy Flummerfelt, Frances Ridenour, Anthony Hamilton, and Holly

Hamilton, on behalf of themselves and those similarly situated in the City of

Taylor, filed suit alleging violations of the United States Constitution and Michigan

law on January 11, 2022.  They later amended their complaint.  (ECF No. 6).  The

claims in the Amended Complaint arise from the tax foreclosure of the named

Plaintiffs' homes located in the City of Taylor.  They allege that, through illegal

conspiracies, they were denied the surplus value or equity in their foreclosed

homes.  Defendants are the Wayne County Treasurer and the City of Taylor, the

government entities involved in the foreclosure and first sale of the properties.

Plaintiffs also sue former Taylor mayor, Richard Sollars; Taylor Community

Development Manager, Jeffery Baum; Shady Awad and his real estate businesses,

Realty Transition LLC ("RT") and Taylor Rehab LLC ("Taylor Rehab") (collectively,

the "Awad defendants"); and Hadir Altoon and his real estate businesses Taylor

South Investment LLC ("Taylor South") and Abigail Investment LLC ("Abigail")

(collectively the "Altoon Defendants").  Plaintiffs allege violations of the Fifth and

Eighth Amendments, due process, and Michigan law.

The City of Taylor, Wayne County, the Awad defendants, and Sollars moved

to dismiss the amended complaint.  (ECF Nos. 29, 46, 48, 66).  On order of the

Magistrate Judge, the parties, except Sollars, filed supplemental briefing

regarding the Sixth Circuit decision, *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022).

(ECF Nos. 71-73, 76-78).  Magistrate Judge Curtis Ivy, to whom this matter was

referred, issued a Report and Recommendation on the motions to dismiss.  (ECF

No. 79).  Plaintiffs and Wayne County filed objections (ECF Nos. 80, 81), and the

parties have filed responses and replies (ECF Nos. 82, 83, 84, 86, 87, 88, 89, 90,

91).  Those objections will be addressed below.

## II.    REPORT AND RECOMMENDATION

The R&R ably sets out the pertinent facts and allegations at issue in this

matter:

As mentioned, this case arises out of the events following the tax foreclosures of Plaintiffs' properties in Taylor, Michigan. Michigan's General Property Tax Act ("GPTA") provides the statutory process by which a governmental entity in the state collects unpaid and delinquent real property taxes through property forfeiture and foreclosure.  Under the Act, at the time of the events alleged, if property taxes remained unpaid in the prescribed twelve-month period, the property was forfeited to the county treasurer.  M.C.L. §§ 211.78a(2), 211.78g(1).  This forfeiture allowed the Foreclosing Governmental Unit ("FGU") to petition for a judgment of foreclosure on the property. The FGU was not, however, required to seek foreclosure. If it did not, the State could then seek foreclosure. M.C.L. §§ 211.78(6); (3)(a). If, during the foreclosure process, the owner did not redeem the property, the FGU would obtain a court order vesting absolute title to the property in itself. M.C.L. § 211.78k(5)(a). Michigan then had the option to purchase the property at the greater of either the minimum bid (the amount of delinquent taxes, interests, and costs) or the fair market value.  If the State declined to purchase the property, the city in which the property was located could purchase the property for the minimum bid.1 M.C.L. § 211.78m(1).  After purchasing the property, the state or local government could then sell the property at a public auction. Important here, the former owner had no right to any of the proceeds, no matter the sale price. *Rafaeli, LLC v. Oakland Cnty*., 505 Mich. 429, 434 (2020).

Wayne County acted as the FGU pursuant to the GPTA.  After Plaintiffs did not redeem their properties, title to the properties was vested in the County.  The State elected not to purchase the properties. The City of Taylor then purchased the properties for the minimum bid, or the amount of the tax delinquency plus costs. The city later sold the properties variably to Awad and

Altoon, who then resold them earning significant profit. Plaintiffs realized none of the profits.

Plaintiffs allege the defendants conspired to deprive them of the surplus value or equity in the properties.  According to Plaintiffs, in 2015, Taylor created a program called the Right of First Refusal program ("ROFR program").  Under this program, Taylor exercised its ROFR to acquire tax-foreclosed properties in Taylor from Wayne County under the GPTA.  Taylor then selected a developer to acquire, redevelop, and resell the properties.  (ECF No. 6, PageID.76-77).  Sollars allegedly had control and influence over the ROFR program, including which developers would be chosen to participate. In July 2015, Sollars recommended to Taylor's City Council that Awad's company, RT, be awarded all tax-foreclosed properties in the city. Soon after, Awad was awarded all 95 tax-foreclosed properties in the ROFR program.  (*Id.* at PageID.77-78, 49).  In return, Sollars received tens of thousands of dollars in cash and services from Awad. This scheme allegedly continued for years.  (*Id.* at PageID.78, ¶ 50). Similarly, from September 2017 through January 2019, Sollars received kickbacks from defendant Altoon, who acquired tax-foreclosed properties and provided Sollars substantial sums of money to his campaign fund.  (*Id.* at PageID.79, ¶ 54).

Flummerfelt's property accrued around $15,000 in unpaid taxes.  After the foreclosure, the City conveyed the property by quitclaim deed to RT for $10.00. RT later transferred the property to Taylor Rehab for $10.00. The property was sold nearly two years later for $165,000. (Id. at PageID.89-90).  Ridenour's property accrued $2,904.87 in delinquent property taxes.  After the County foreclosed on the property and Taylor acquired it for the minimum bid, Taylor conveyed the property to RT by quitclaim deed for $10.00.  (*Id.* at

PageID.90). Plaintiffs do not indicate that the Ridenour property was sold again. The Hamilton property accrued $3,396.09 in delinquent taxes. Taylor conveyed the property to RT by quitclaim deed for an unspecified amount. The Hamilton property was sold by RT for $55,000 about three years later. (*Id*. at PageID.90-91).

Awad and Altoon pleaded guilty to federal charges of conspiracy to commit bribery concerning programs receiving federal funds under 18 U.S.C. §§ 371 and 666(a). (*Id*. at PageID.85, ¶¶ 46-80). Sollars was awaiting trial related to the same scheme at the time the complaint was filed.

(ECF No. 79, PageID.741-744).

The Magistrate Judge made the following recommendations regarding the parties' motions to dismiss:

1.     Plaintiffs concede that Wayne County is the only proper defendant for its Fifth Amendment takings claims and thus, agrees that the Takings claim against the City of Taylor should be dismissed.

2.     Plaintiffs concede that their federal takings claims against the County are time-barred and should be dismissed.

3.     The Michigan inverse condemnation claim against the City of Taylor should be dismissed because claims for vindication of their property rights can only be brought against the County.

4.      The Michigan inverse condemnation claim against the County remains viable and is not barred by the statute of limitations.

5.      Plaintiffs procedural and substantive due process claims against Wayne County should not be dismissed.

6.      Plaintiffs' conspiracy and RICO claims against the Awad Defendants should be dismissed because the injury to Plaintiffs occurred when the County took title to their property and no injury occurred when the City deeded the property to the individual defendants.  And to say otherwise would be an unauthorized extension of the property rights identified in *Hall*.

7.      Defendant Sollars' motion to dismiss should be granted for the same reasons as the Awad Defendants.

III.   **STANDARD OF REVIEW**

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review.  28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1)-(3).  This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id*.  "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to

6

which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that dispute the general correctness of the report and recommendation are improper. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id.* (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough that the court can squarely address them on the merits. *See Pearce*, 893 F.3d at 346. And, when objections are "merely perfunctory responses . . . rehashing . . . the same arguments set forth in the original petition, reviewing courts should review [a Report and Recommendation] for clear error." *Ramirez v. United States*, 898 F.Supp.2d 659, 663 (S.D.N.Y. 2012); *see also Funderburg v. Comm'r of Soc. Sec.*, No. 15-10068, 2016 WL 1104466, at *1 (E.D. Mich. Mar. 22, 2016) (Hood, J.) (noting that the plaintiff's objections merely restated his summary judgment arguments, "an approach that is not appropriate or sufficient").

**IV.     WAYNE COUNTY'S OBJECTIONS**

Wayne County makes two objections to the R&R.  First, the County urges the court to decline to adjudicate the state law inverse condemnation claim based on *Pullman* abstention.  Second, the County argues that the court should dismiss Plaintiffs' federal due process claims based on the Sixth Circuit's decision in *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022) (*Hall I*) and because Plaintiffs abandoned those claims.  The court will address each objection in turn.

A.      Inverse Condemnation Under the Michigan Constitution

The R&R suggests that the inverse condemnation claim can proceed, despite the Sixth Circuit directing in other cases that the federal courts should abstain from deciding such claims under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500-01 (1941).  *See Hall I*, 51 F.4th at 196 (The court of appeals directed the district court to abstain from adjudicating the inverse condemnation claim because "[w]hether the facts alleged here violate the Michigan Constitution's Takings Clause is an issue for the Michigan courts to decide.").  The R&R correctly points out that neither party argued that *Pullman* abstention applied to the state inverse condemnation claim, and thus, declined to address this argument.  *See* R&R, ECF No. 79 at PageID.753, n.5.

Wayne County argues, among other things, that the court should abstain from deciding this claim based on *Hall* and *Pullman*.  Plaintiffs agree that the court should follow *Hall I* but urges the court to make no other rulings as to the viability of the inverse condemnation claim, such as whether it is barred by the statute of limitations or whether such a claim can be asserted against the City of Taylor.  While generally, the court agrees with the Magistrate Judge's point that the court should not make the parties' arguments for them or address undeveloped arguments, the Sixth Circuit has made clear in both *Hall I* and subsequently in *Sinclair v. Meisner*, 2022 WL 18034472, at *3 (6th Cir. Dec. 29, 2022), that district courts should abstain from deciding claims under the Michigan Constitution's Takings Clause.  The court will, therefore, modify the R&R in this regard, follow the dictates of the Sixth Circuit's decisions in *Hall* and *Sinclair*, and abstain from any and all decisions on the merits of the state law takings claim.

      B.    <u>Federal Due Process Claims</u>

The County contends that the Magistrate Judge erred when he concluded that the federal due process claims can be raised in this context.  As to procedural due process, the County argues that the court should dismiss those claims for the same reason the Sixth Circuit in *Hall* affirmed the district court's dismissal of the procedural due process claims.  *See Hall I*, 51 F.4th at 196-197 ("[F]or substantially

the reasons stated by the district court, we affirm the dismissal of Plaintiffs' claim

in Count[]...V (Procedural Due Process)").  As Plaintiffs point out, the district court

dismissed the procedural due process claim in *Hall* because it found that Michigan

does not recognize a property interest in lost equity.  *Hall v. Meisner*, 2021 WL

2042298, at *15 (E.D. Mich. May 21, 2021).  However, the Sixth Circuit in *Hall*

concluded that Michigan *does* recognize a property interest in lost equity, as

further explained in *Sinclair*.  Notably, the Magistrate Judge did not have the

benefit of the Sinclair decision when he issued his report and recommendation.

In *Sinclair*, the court of appeals reversed the district court's finding that the

plaintiff did not have a cognizable property interest in the equity of her home.

And the court further held that the plaintiff's procedural due process claim was

not futile where she alleged that the defendants had no procedure at all in place

for homeowners to challenge the forfeiture of their equity interests.  *Id*. at *3.

Plaintiffs' Amended Complaint here contains similar allegations to those in

*Sinclair*.  (ECF No. 6, PageID.98-99).  Importantly, a review of the procedural due

process claim in the complaint in *Hall* reveals no assertion that the defendants

failed to provide notice and an opportunity to be heard regarding their equity

interests.  *Hall v. Meisner*, E.D. Mich. Case No. 20-12230, ECF No. 1, Count V,

PageID.26-28.  Thus, the present procedural due process claim is unlike *Hall* and

more akin to the facts in *Sinclair*.  Accordingly, Plaintiffs here may proceed with

their procedural due process claim pursuant to *Hall* and *Sinclair*.[1]

The County next argues that Plaintiffs' substantive due process claim

should be dismissed because it is essentially a repackaged federal takings claim.

As explained by the district court in *Hall v. Meisner*, substantive due process

claims may not be asserted "as a stand-in to address a failed takings claim."  *Hall*

*v. Meisner*, 565 F. Supp. 3d 953, 976 (E.D. Mich. 2021) (quoting *Ostipow v.*

*Federspiel*, 824 F. App'x 336, 345 (6th Cir. 2020)).  Plaintiffs do not respond to this

argument in their response to the County's objection.  While the Magistrate Judge

did not have the opportunity to pass on this argument, the court agrees with the

County and concludes that "substantive due process does not apply to claims that

should be brought under more specific constitutional provisions."  *Grater v.*

*Damascus Twp., Ohio Trustees*, No. 22-3616, 2023 WL 3059080, at *4 (6th Cir.

Apr. 24, 2023) (Where the plaintiff brought his claims under the appropriate,

specific constitutional provisions (the Takings Clause and the procedural

---

[1]  Despite the County's arguments, the court is not persuaded that Plaintiffs abandoned their due process claims.  The County's motion to dismiss asserted that all Plaintiffs' federal constitutional claims should be dismissed based on the Michigan Supreme Court's decision in *Rafaeli, LLC v. Oakland Cty.*, 505 Mich. 429 (2020), which concluded that the relief sought by Plaintiffs here was not available under the United States Constitution.  (ECF No. 46).  The County did not provide any more specific arguments regarding due process in its supplemental brief.  (ECF No. 73).  Thus, the County did not offer any additional arguments to support the dismissal of Plaintiffs' due process claims.  Plaintiffs cannot be punished for failing to respond to arguments that the County did not make before the Magistrate Judge.

component of the Due Process Clause), "[s]ubstantive due process does not provide him another bite at the apple.") (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality op.)). Like *Grater*, Plaintiffs here properly brought claims under the Takings Clause and the procedural Due Process Clause. Accordingly, a substantive due process claim is unavailable, and this claim will be dismissed.

## IV. PLAINTIFFS' OBJECTIONS

Plaintiffs lodge three objections to the R&R. First, they assert that the Magistrate Judge erred in recommending dismissal of their civil conspiracy and RICO claims. Second, they contend that the Magistrate Judge erred in dismissing their unjust enrichment claim. And third, they argue that Magistrate Judge incorrectly dismissed their Michigan inverse condemnation claim against the City of Taylor. Each objection will be addressed below.

### A.    Civil Conspiracy and RICO

Plaintiffs allege that the Awad defendants engaged in a scheme with the City of Taylor, former Mayor for the City of Taylor defendant Sollars, and former City of Taylor Treasurer Jeffrey Baum to induce the City to exercise its statutory right of first refusal to purchase tax-foreclosed homes for the minimum bid, or the amount of unpaid taxes and fees, and avoid a public sale. After Taylor obtained title to the properties, it transferred them to one of the private defendants, which

would then sell it for its true market value and keep substantial profits.  In return

for the transfer of the properties, the individual defendants paid tens of

thousands of dollars in bribes and kickbacks to Sollars and Baum.  Other than

Sollars, the individual defendants have pleaded guilty to federal charges of

conspiracy to commit bribery concerning programs receiving federal funds at the

time of Plaintiffs' complaint.  Plaintiffs sue the Awad defendants, Sollars, Baum,

and the Altoon Defendants for violating RICO under 18 U.S.C. § 1962(c) and (d),

civil conspiracy under § 1983, and unjust enrichment under Michigan law.

After obtaining supplemental briefing from the parties on the impact of the

Sixth Circuit's decision in *Hall I,* the Magistrate Judge concluded that the RICO and

civil conspiracy claims should be dismissed because the alleged wrongdoing by

the non-County Defendants occurred *after* the injury that the Sixth Circuit

identified as violating the Constitution – that is, when the County took absolute

title to their properties.  *See Hall v. Meisner,* 2022 WL 7478163, at *1 (6th Cir. Oct.

13, 2022) ("*Hall II*") (Taking title "was the action that caused the injury giving rise

to this suit; what happened afterward had no effect upon their legal rights.").

Thus, in *Hall II*, the Sixth Circuit affirmed the dismissal of all claims against the City

of Southfield and others except Oakland County because the actions of those

defendants came after Oakland County took title to the properties.  *Id*.  Here, the

R&R concludes that the alleged wrongdoing by the non-County Defendants—

scheming or conspiring to bribe Taylor officials to deed Plaintiffs' properties to

them so they could sell the properties for significant profit and avoid a public sale

that would have resulted in surplus proceeds that Plaintiffs could claim – also

occurred *after* the County took title to Plaintiffs' properties.  (ECF No. 79,

PageID.761).  Thus, the R&R suggests that the civil conspiracy and RICO claims

should be dismissed.

A civil conspiracy under § 1983 is "an agreement between two or more

persons to injure another by unlawful action."  *Revis v. Meldrum*, 489 F.3d 273,

290 (6th Cir. 2007).  To prevail on a § 1983 civil conspiracy claim, Plaintiffs must

show that (1) a "single plan" existed, (2) the defendants "shared in the general

conspiratorial objective" to deprive Plaintiffs of their constitutional (or federal

statutory) rights, and (3) "an overt act was committed in furtherance of the

conspiracy that caused injury" to Plaintiffs.  *Bazzi v. City of Dearborn*, 658 F.3d

598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir.

1985)).  Plaintiffs allege two federal deprivations: one, a violation of the Takings

Clause (which they concede is time-barred) and two, a violation of their due

process rights.  While acts in furtherance of the conspiracy are alleged to have

14

occurred before at least one of the foreclosures at issue here took place,[2] nothing in the Amended Complaint suggests that Wayne County's actions in conducting the foreclosure are part of the conspiracy.  Indeed, the alleged conspiracy only relates to the abuse of the ROFR program, which necessarily occurs after each of the foreclosures took place and of which Wayne County is not alleged to be a part.  Accordingly, the alleged constitutional deprivations (the taking and the due process violation) were completed by Wayne County when it foreclosed on the subject properties and the purpose of any conspiracy could not have been to deprive Plaintiffs of these federal constitutional rights.  Thus, Plaintiffs' Amended Complaint fails to plausibly allege an essential element of a § 1983 civil conspiracy (a deprivation of a federal right) and the Magistrate Judge correctly concluded

---

[2]  The Amended Complaint alleges that the first act in furtherance of the conspiracy occurred on July 20, 2015:

> 49. On July 20, 2015, without a legitimate bid process, Sollars recommended to Taylor's City Council that Shady's company, RT, be awarded all tax-foreclosed properties that Taylor had or would acquire under its ROFR program.  Shortly thereafter, in July 2015, Shady was awarded all 95 tax-foreclosed properties in Taylor's ROFR program for that year.

> 50. In return for Sollars arranging for Shady's company RT being awarded all 95 tax-foreclosed properties in Taylor's ROFR program, Shady secretly and illegally paid tens of thousands of dollars in cash and services to Sollars, which he did not publicly disclose.

(ECF No. 6, PageID 77-78).  Wayne County foreclosed on the subject properties on June 9, 2015 (ECF No. 46-2); March 20, 2015 (ECF No. 46-4); and June 8, 2018 (ECF No. 46-6).

that this claim must be dismissed.

The analysis applicable to a civil RICO claim differs.  First, to survive a

motion to dismiss a RICO claim under § 1962(c), a plaintiff must allege: (1) a

defendant's conduct, (2) an enterprise, and (3) a pattern of racketeering activity.

18 U.S.C. § 1962(c); *Sedima, S.P.R.L. v. Imrex Co*., 473 U.S. 479, 496 (1985) (citing

18 U.S.C. § 1962(c)).  Second, to allege a plausible violation of RICO conspiracy

under § 1962(d), a plaintiff must state facts sufficient to demonstrate all the

elements of a RICO violation and plead the "existence of an illicit agreement to

violate the substantive RICO provision."  *Aces High Coal Sales, Inc. v. Cmty. Bank &*

*Tr. of W. Georgia*, 768 F. App'x 446, 459 (6th Cir. 2019) (citing 18 U.S.C.

§ 1962(d)).  "Racketeering activity consists of acts which are indictable under a

number of federal statutes listed in 18 U.S.C. 1961(1)."  *Heinrich v. Waiting Angels*

*Adoption Servs., Inc*., 668 F.3d 393, 404 (6th Cir. 2012).  To allege a RICO

conspiracy under § 1962(d), a plaintiff must successfully plead all the elements of

a RICO violation and plead the "existence of an illicit agreement to violate the

substantive RICO provision." *Heinrich*, 668 F.3d at 411 (citing *United States v.*

*Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

Plaintiffs claim that *Sinclair* left the door open on their RICO claim and *Hall*

should not bar it because no RICO claim was at issue in that case.  Plaintiffs

further argue that they merely ask the court to validate the property rights identified in and *Rafaeli* and *Hall I*, which respectively found that surplus proceeds from a tax foreclosure sale and a homeowner's equity are protected property rights.  Under *Rafaeli*, a property owner has a right under the Michigan Constitution to any surplus proceeds from the sale of the property, which constitutes just compensation for the equity interest in the property; if there are no surplus proceeds, then the owner has no cognizable equity interest in the property requiring just compensation under the state constitution's takings clause.  *Rafaeli*, 505 Mich. at 477.  Under *Hall I*, the United States Constitution recognizes an equity interest for which just compensation must be paid, even if the sale of the property does not yield surplus proceeds.  *Hall I*, 51 F. 4th, at 196.

In their response to the objections, the Awad Defendants treat the § 1983 conspiracy claim and the RICO claim as one, asserting that both claims must fail for the reasons identified above as to the conspiracy claim.  A RICO claim, unlike a § 1983 conspiracy claim, is not dependent on the violation of a federal constitutional right and thus, the analysis differs.  Sollars argues, however, that Plaintiffs cannot show a cognizable RICO injury, which is an injury caused "by reason of" a RICO violation.  (ECF No. 84, PageID.845, citing *Holmes v. Sec. Inv'r Prot. Corp*., 503 U.S. 258, 267-74 (1992)).  This is so, according to Sollars, because

Plaintiffs lost their property interests the moment that the County foreclosed on

their properties and there is no allegation that Wayne County foreclosed "by

reason of" Sollars alleged conduct.  Additionally, Sollars argues that Plaintiffs'

property interests under Michigan law were not injured "by reason of" Sollars'

conduct because *Rafaeli* limited the plaintiffs' claims to the excess proceed

realized from the tax foreclosure sale and a former property owner has a

compensable takings claim under the Michigan Constitution only if the tax

foreclosure sale produces a surplus.  *See Rafaeli*, 505 Mich. at 477.  According to

Sollars, there is no dispute that the City of Taylor complied with the GPTA when it

acquired Plaintiffs' properties, and that the acquisition did not generate any

surplus.  Sollars argues that because no surplus was retained by the City of Taylor,

Plaintiffs did not sustain a cognizable injury to property that is recognized under

Michigan law.  Thus, according to Sollars, this court should dismiss the civil RICO

claim because Plaintiffs fail to establish an injury to property.  *Jackson*, 731 F.3d at

563-64.

In response, Plaintiffs point out that the Amended Complaint alleges that

Sollars and the other non-county Defendants conspired with each other to cause

the City of Taylor to exercise its right-of-first refusal (instead of allowing the

properties to go to public auction) and obtain the properties at issue, transfer the

real property to the Awad and Altoon Defendants, and then allow them to sell the

properties for much higher prices, keeping the profit.  Plaintiffs maintain that this

conspiracy purposely prevented Plaintiffs' properties from being sold at public

auction and but for this conspiracy, Plaintiffs' properties would have been sold at

auction for fair market value, thereby generating surplus proceeds, which is a

protected right under *Rafaeli*.  (ECF No. 6, ¶¶ 12, 13, 75, 168).  Plaintiffs' theory

under RICO is that the conspiracy siphoned excess surplus value away from

Plaintiffs and benefited each of the non-county Defendants.  Nothing in *Hall I* or

*Hall II* circumscribes the property right identified in *Rafaeli*.  And *Rafaeli* makes

clear that the property right under Michigan law is the surplus proceeds, which do

not come into existence, if at all, until the sale of property.  If the City was

wrongfully induced to exercise its right-of-first refusal in order to impair Plaintiffs'

right to the surplus proceeds, then Plaintiffs have plausibly identified an injury to

their property interest in the surplus proceeds and Sollars' objection to the RICO

claim falls by the wayside.  Accordingly, the court finds that Plaintiffs' RICO claim

based on their state law property interest in the surplus proceeds may go

forward.

B.    Unjust Enrichment

Plaintiffs contend that the Magistrate Judge erred in dismissing the unjust

enrichment claim, pointing to the discussion of such a claim in *Sinclair*.  "The

elements of a claim for unjust enrichment are: (1) receipt of a benefit by the

defendant from the plaintiff and (2) an inequity resulting to plaintiff because of

the retention of the benefit by defendant."  *Innotext, Inc. v. Petra'Lex USA Inc*.,

694 F.3d 581, 594 (6th Cir. 2012) (quoting *Barber v. SMH (US), Inc.*, 509 N.W.2d

791, 796 (Mich. Ct. App. 1993)).  If these elements are satisfied, "[a] contract will

be implied in law to prevent unjust enrichment."  *AFT Mich. v. Michigan*, 303

Mich. App. 651, 660 (2014).  In *Sinclair*, the court found that an unjust enrichment

claim would lie against the County because the plaintiff plausibly alleged that she

suffered an inequity when the County retained that interest without

compensating for it.  *Id*. at *4.[3]  As to parties to whom the property was

subsequently transferred, who are third parties because the homeowner's

interest was not transferred directly to them, the court held that such parties are

not liable for unjust enrichment unless they "requested the benefit or misled the

other parties."  *Id*. (quoting *Karaus v. Bank of N.Y. Mellon*, 300 Mich. App. 9, 24

(2012) (per curiam) (quoting *Morris Pumps v. Centerline Piping, Inc*., 273 Mich.

---

[3] Plaintiffs here do not assert an unjust enrichment claim against the County.

App. 187, 196 (2006)).  Plaintiffs maintain that the Amended Complaint

sufficiently alleges that the third parties here (the Awad Defendants, the Altoon

Defendants, Sollars, and Baum) either requested a benefit from Plaintiffs or

misled them and the County.  (ECF No. 81, PageID.790, citing ECF No. 6, ¶¶ 45-74,

200-213).  The Defendants contend that these allegations merely recount the

alleged conspiracy and do not suggest that any of the third parties requested a

benefit from Plaintiffs or the County or misled either of them.  The court agrees

with Defendants that the Amended Complaint does not plausibly allege that these

Defendants either requested a benefit from Plaintiffs or the County or misled

either of them.  Accordingly, the court agrees with the Magistrate Judge that the

unjust enrichment claim must be dismissed.

     C.    <u>Inverse Condemnation Under the Michigan Constitution</u>

Plaintiffs object to the Magistrate Judge's recommendation to dismiss the

inverse condemnation claim against the City of Taylor.  Instead, Plaintiffs argue

that the court should abstain from making any decision on this claim.  The court

agrees for the reasons set forth in more detail above.  Again, the court will modify

the R&R in this regard and abstain from any and all decisions on the merits of the

state law takings claim.

## V.   CONCLUSION AND ORDER

For the reasons set forth above, the Court **ADOPTS** in part and **MODIFIES** in part, the Report and Recommendation as follows:

1.      Wayne County's motion to dismiss (ECF No. 46) is **GRANTED** in part: the federal taking claims is **DISMISSED** as time-barred; the court **ABSTAINS** from any decision on the Michigan inverse condemnation claim; the substantive due process claim is **DISMISSED**; and the procedural due process claim remains pending.

2.      The City of Taylor's (ECF No. 29) motion to dismiss is **GRANTED** in part: the federal takings and the unjust enrichment claims are **DISMISSED**, and the court **ABSTAINS** from any decision on the Michigan inverse condemnation claim.  Plaintiffs concede that the due process claims against the City should be dismissed and thus, these claims are also **DISMISSED**.  (ECF No. 53, PageID.422, n. 1).

3.      The Awad Defendants' motion to dismiss (ECF No. 48) is **GRANTED** as to the § 1983 conspiracy and the unjust enrichment claims and **DENIED** as to the RICO claim.

4.      Sollars' motion to dismiss (ECF No. 66) is **GRANTED** as to the § 1983 conspiracy and unjust enrichment claims and **DENIED** as to the RICO claim.

**SO ORDERED**.

Date: July 21, 2023                          <u>s/F. Kay Behm</u>
                                             F. Kay Behm
                                             United States District Judge