UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY FLUMMERFELT, *et al.*,                    Case No. 22-10067

     Plaintiffs,                                   F. Kay Behm
v.                                             United States District Judge

CITY OF TAYLOR, *et al.*,                      Curtis Ivy
                                               United States Magistrate Judge

     Defendants.
_____ /

**OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS
(ECF Nos. 142, 144) AND PLAINTIFFS' MOTION FOR
<u>LEAVE TO FILE SECOND AMENDED COMPLAINT (ECF No. 143)</u>**

## I.    PROCEDURAL HISTORY

Plaintiffs Judy Flummerfelt, Frances Ridenour, Anthony Hamilton, and Holly Hamilton, on behalf of themselves and those similarly situated in the City of Taylor, filed suit alleging violations of the United States Constitution and Michigan law on January 11, 2022.  They later amended their complaint.  (ECF No. 6).  The claims in the Amended Complaint arise from the tax foreclosure of the named Plaintiffs' homes located in the City of Taylor.  They allege that, through illegal conspiracies, they were denied the surplus value or equity in their foreclosed homes.  Plaintiffs alleged violations of the Fifth and Eighth Amendments, due process, and Michigan law.

The City of Taylor, the Wayne County Treasurer, the Awad Defendants, and Defendant Sollars moved to dismiss the amended complaint.  The court adopted the Magistrate Judge's report and recommendation on the motions, as modified, and concluded in relevant part that (1) Plaintiffs conceded that the federal takings claim against the Wayne County Treasurer was time-barred; and (2) Sixth Circuit authority required the court to abstain on the state law takings claim under the *Pullman* abstention doctrine.  (ECF No. 97).  At this juncture, the following claims remained:  Procedural due process against the Wayne County Treasurer; and the RICO claim against Sollars and the Awad Defendants.  (ECF No. 97, PageID.970-71).  Plaintiffs subsequently moved to amend the complaint, seeking reinstatement of their federal takings claim against the Wayne County Treasurer, stating the court did not consider applicable tolling principles and contending that *Pullman* abstention should no longer be applied to its inverse condemnation claim under the Michigan Constitution.  The court denied Plaintiffs' motion for leave to amend to add a federal takings claim as futile, given Plaintiffs' judicial admission that it was barred by the statute of limitations.  (ECF No. 139).  Further, the court determined it would no longer abstain from deciding Plaintiffs' inverse condemnation claim under Michigan law on the merits because *Pullman* abstention no longer applied.  *Id*.

Presently before the court are three motions.  First, Defendant Wayne County Treasurer has now moved to dismiss the amended complaint for lack of subject matter jurisdiction, arguing that the Treasurer is entitled to sovereign immunity under the holding of *Bowles v. Sabree*, 2024 WL 1550833, at *3 (6th Cir. Apr. 10, 2024).  Second, the Awad Defendants move to dismiss the amended complaint under Rule 12(b)(6) based on *Schafer v. Kent Cnty*., No. 164975, --- Mich. ---; 2024 WL 3573500 (Mich. July 29, 2024).  Third, Plaintiffs move to amend their complaint a second time, seeking to add Wayne County as a defendant, arguing that the County has always been named in the Complaint and Wayne County knew or should have known it was being served, had the summons not been mistakenly issued to the Wayne County Treasurer.  (ECF No. 143).

These matters are fully briefed and the court held a hearing on November 6, 2024.  For the reasons set forth below, the court **GRANTS** the Treasurer's motion to dismiss in part, finding he is immune under the doctrine of sovereign immunity for any actions taken on behalf of the state, but he is not immune as to actions taken by Wayne County and remains in the suit in his official capacity to this extent.  The motion to amend the complaint to add Wayne County is **DENIED** as moot, given the court's decision that Wayne County is a Defendant because the Treasurer was sued in his official capacity.  Plaintiffs' motion for leave to amend is **DENIED** as futile as to the procedural due process claim because that

claim is barred by the statute of limitations.  A decision on the futility of Plaintiffs'

state law inverse condemnation claim against Wayne County is **HELD IN**

**ABEYANCE** pending a decision from the Michigan Supreme Court in *Jackson v.*

*Southfield Neighborhood Revitalization Initiative*, 12 N.W.3d 600, 601 (Mich.

2024).  The Awad Defendants' motion to dismiss is **DENIED** because the court

finds that PA 256 does not provide the exclusive remedy to Plaintiff's RICO claims.

## II.    ANALYSIS

### A.    Standards of Review

#### 1.    Motion to Dismiss Rule 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the court "must

construe the complaint in the light most favorable to the [nonmoving party] ...

[and] accept all well-pled factual allegations as true*."  League of United Latin Am.*

*Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush*

*Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003).  The complaint must provide "'a

short and plain statement of the claim showing that the pleader is entitled to

relief,' in order to 'give the defendant fair notice of what the ... claim is and the

grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Moreover, the

complaint must "contain[ ] sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief, such as "when an affirmative defense ... appears on its face." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (quotation marks omitted). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[ ] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id*. at 678. However, a claim does not have "facial plausibility" when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. at 679. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527. Showing entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion-to-dismiss stage, the court does not consider whether the factual

allegations are probably true; instead a court must accept the factual allegations as true, even when skeptical.  *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *id*. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable ..."); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations").  Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the claims,' not whether the plaintiff can ultimately prove the facts alleged."  *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

### 2.  *Subject Matter Jurisdiction – Rule 12(b)(1)*

A motion brought under Federal Rule of Civil Procedure 12(b)(1) alleges that the court does not have subject matter jurisdiction over the claims as presented.  Fed. R. Civ. P. 12(b)(1).  Allegations that a plaintiff lacks standing can be brought as a motion to dismiss for lack of subject matter jurisdiction.  *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008) ("We review de novo a district court's dismissal of a case for lack of standing – lack of subject matter jurisdiction – under Fed. R. Civ. P. 12(b)(1).").  Motions brought under Rule

12(b)(1) fall into two categories: facial attacks and factual attacks.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  A facial attack is a "challenge to the sufficiency of the pleading itself" whereas a factual attack "is a challenge to the factual existence of subject matter jurisdiction."  *Id.*  In this case, Defendants bring a facial attack challenging the sufficiency of the Plaintiffs' allegations that they suffered a concrete injury in fact.  *Id.*  Because this is a facial attack, the court must "accept[] the material allegations in the complaint as true and construe[] them in the light most favorable to the nonmoving party."  *Id.*

### 3.    Motion for Leave to Amend the Complaint

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Generally, Rule 15(a)(2) embodies a "liberal amendment policy."  *Brown v. Chapman*, 814 F.3d 436, 442-43 (6th Cir. 2010).  However, leave to amend may be denied when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Id.* at 443.  A proposed amendment is considered futile if "the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

B.    <u>Treasurer's Motion to Dismiss/Plaintiffs' Motion to Amend</u>

1.    *Sovereign Immunity/Official Capacity Suit*

The Treasurer argues that Plaintiffs chose to sue the Treasurer only and not

Wayne County, and the Treasurer is plainly entitled to sovereign immunity under

*Bowles*.  Accordingly, the Treasurer moves for dismissal of all claims against him.

Relatedly, Plaintiffs move to amend the complaint to add Wayne County as a

defendant and to dismiss the Treasurer.  Plaintiffs argue that Rule 15 allows such

an amendment "changes the party or the naming of the party against whom a

claim is asserted" relates back to the date of the original pleading if "the

amendment asserts a claim or defense that arose out of the conduct, transaction,

or occurrence set out—or attempted to be set out—in the original pleading," and

if, within 120 days after the complaint is filed, "the party to be brought in by

amendment (i) received such notice of the action that it will not be prejudiced in

defending on the merits; and (ii) knew or should have known that the action

would have been brought against it, but for a mistake concerning the proper

party's identity."  Fed. R. Civ. P. 15(c).

While the Treasurer is correct that he is entitled to sovereign immunity

under *Bowles*, it is less clear that Plaintiffs chose only to sue the Treasurer and not

Wayne County.  In *Bowles*, the plaintiffs sued both the County and the County

Treasurer.  Both entities asserted they were entitled to sovereign immunity.  The

8

Sixth Circuit pointed out that claims against an officer in his official capacity are generally treated as claims against the government entity the officer represents. *Bowles*, at *2 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  Indeed, the Treasurer was "undisputedly an officer of the County, not the State; thus, a suit against him in his official-capacity is presumably one against the County itself."  *Id*.  Yet, the Court of Appeals agreed that in this context – where the Treasurer was duty bound to enforce the Michigan Tax Act once the County decided to foreclose – he was acting on behalf of the State, not the County and was entitled to sovereign immunity under the Eleventh Amendment.  *Id*.  The court concluded, however, that Wayne County was not entitled to sovereign immunity because it was not ordinarily considered an arm of the state and further could not be so considered in the circumstances presented.  *Id*.  That is, the County took actions because it chose to take them, not because it was required to do so under state law.  *Id.*

Because Wayne County was sued separately from the Treasurer, the *Bowles* court was not presented with the precise issue here – where the County was only sued through an official capacity suit of the Treasurer and the Treasurer is dismissed based on sovereign immunity, does the County remain in the suit based on claims against the County for which the Treasurer is not immune? There is no dispute that Plaintiffs intended, and the Treasurer understood, this

suit to be an official capacity suit.[1]  Thus, in the court's view, the other actions by

the County for which no sovereign immunity was granted in *Bowles* must similarly

remain live here.

This conclusion is reinforced by the applicable service of process rules.

While Plaintiffs now contend that it was "mistake" to issue the summons to the

Treasurer, instead of Wayne County, "suing a defendant in his official capacity is

the same as suing the governmental entity; in such a case, service must be made

under Rule 4(j)."[2]  *Brewer v. Detroit Pub. Sch. Cmty. Dist.*, 2018 WL 3301524, at *2

(E.D. Mich. Jan. 10, 2018), report and recommendation adopted in part, 2018 WL

1128253 (E.D. Mich. Mar. 2, 2018) (citation omitted).  Rule 4(j)(2)(B) allows

service in a manner prescribed by state law.  In Michigan, service of process on

counties may be made by serving the chairperson of the board of commissioners

or the county clerk of a county.  Mich. Ct. R. 2.105(G)(1).  Or service of process

---

[1] The Treasurer previously acknowledged that he was sued in his individual and official capacity and even argued that the official capacity suit was duplicative of the claims brought against the County.  (ECF No. 46, PageID.302, Wayne County Treasurer's Motion to Dismiss First Amended Complaint).

[2] Fed. R. Civ. P. 4(j)(2) provides:
(2) State or Local Government. A state, a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by:
    (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
    (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

"may be made by [1] serving a summons and a copy of the complaint on a person in charge of the office of an officer on whom service may be made and [2] sending a summons and a copy of the complaint by registered mail addressed to the officer at his or her office."  Mich. Ct. R. 2.105(G).  Here, service was made on Natasha Barter, who, according to the return of service was authorized to accept service on behalf of the Wayne County Treasurer and was acting "on behalf of the County Clerk."  (ECF No. 9).  Accordingly, Plaintiffs complied with the service requirements for serving the Treasurer in his official capacity, which is, in fact, a suit against the County.  In the court's view, Plaintiffs may proceed against the County via the official capacity suit for all actions not barred by sovereign immunity.  That is, the claims against the Treasurer for his state action are dismissed based on sovereign immunity.  However, the Treasurer remains in the suit in his official capacity to any claims involving the actions of Wayne County.  However, the court is also compelled to address Defendant's statute of limitations argument made in opposition to the motion for leave to amend.  Essentially, the Treasurer argues that the procedural due process claim against the County would be futile because any § 1983 claim is barred by the three-year statute of limitations.  *See Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (noting that the appropriate statute of limitations "for § 1983 actions arising in Michigan is the state's three-year limitations period[.]").  There is authority supporting

Defendant's argument that the due process claim accrued at the time of the foreclosure. *Lyndon's LLC v. City of Detroit, Michigan*, No. 23-1895, 2024 WL 3427176 (6th Cir. July 16, 2024) (The due federal due process claims stemmed from actions allegedly taken – or not taken – at the time of the foreclosure and the claims were not brought within three years of their accrual, which was the foreclosure action.). The foreclosures here occurred between 2015 and 2018 and this suit was filed in 2022, more than three years after the most recent foreclosure. Accordingly, Plaintiffs' due process claim is barred by the statute of limitations. Further, Plaintiffs' motion for leave to amend to add Wayne County is denied as moot.

> 2. *Does PA 256 Mandate Dismissal of the Inverse Condemnation Claim?*

The Treasurer also argues that even if the County were properly named, Plaintiffs' inverse condemnation claim must still be dismissed pursuant to *Schafer v. Kent Co*. The Awad Defendants also contend in their motion to dismiss that *Schafer* mandates dismissal of the RICO claim. By way of background, in 2020, the Michigan Supreme Court held the retention of surplus proceeds from tax-foreclosure sales according to the then-in-effect GPTA was an unconstitutional taking under Michigan's Takings Clause. *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429 (2020). In December 2020, in response to *Rafaeli*, the Michigan legislature

enacted Public Act 256 ("PA 256"), which "create[ed] a controlling and structured system for adjudication of tax-foreclosure disputes as the exclusive means of obtaining surplus proceeds." *Schafer*, 2024 WL 3573500, at *19; *see also* Mich. Comp. Laws § 211.78t (detailing this process). *Schafer* also addressed the retroactive application of PA 256; more specifically, the Court determined that the remedy outlined in PA 256 is available to former property owners who had their property foreclosed upon and sold at auction before the statutory remedy actually existed. *Id*. at *19. The Court also concluded that such claimants were entitled to a "reasonable" amount of time to file their statutory-provided remedy under PA 256. *Id*. at *20. Moreover, the Michigan Supreme Court concluded that PA 256 "establishes a controlled and limited time window by which claimants may file their notice of intent to claim surplus proceeds." *Id*. at *21 (citing Mich. Comp. Laws § 211.78t(6)). The Awad Defendants and the Treasurer argue that PA 256 provides the exclusive remedy under state and federal law for Plaintiffs to recover surplus proceeds, citing *Howard v. Cnty. of Macomb*, 2024 WL 3680996, at *3 (E.D. Mich. Aug. 6, 2024) (Ludington, J.). Accordingly, Defendants argue that all of Plaintiffs' claims must be dismissed, as they are limited to their state statutory remedy under PA 256.

In *Howard*, the court held that claims related to foreclosures that occurred *after* Mich. Comp. Laws § 211.78t took effect in December 2020 are barred

because § 211.78t provides an opportunity—in fact, the exclusive mechanism—to claim the surplus under the applicable law.  *Id.*; *see also Metro T. Properties, LLC v. Cnty. of Wayne*, 2024 WL 644515, at *3 (E.D. Mich. Feb. 15, 2024) (dismissing complaint for surplus proceeds relating to property foreclosed on March 20, 2022 where plaintiff failed to avail itself of mechanism for claiming surplus proceeds in § 211.78t); *see also In re Petition of Barry Cnty. Treas. for Foreclosure*, 2024 WL 386939, at * (Mich. Ct. App. Feb. 1, 2024) (concluding that former property owner forfeited her right to any surplus from the sale of foreclosed property due to her failure to comply with the statutory notice requirement); *In re Hillsdale Cnty. Treas. for Foreclosure*, 2023 WL 9007044, at *3 (Mich. Ct. App. Dec. 28, 2023) (same); *In re Muskegon Cnty. Treas. for Foreclosure*, 2023 WL 7093961, at *1 (same); *In re West*, 2022 WL 1309939, at *7 (Bankr. E.D. Mich. May 2, 2022) (holding that the "[d]ebtor's failure to avail himself of the opportunity to recover the surplus proceeds [through the GPTA's mechanism] now precludes him from asserting that his property was transferred for less than reasonably equivalent value.").

Here, however, the proposed class involves only foreclosures that occurred *before* the 2020 amendment.  *See* Amended Complaint, ECF No. 6, ¶¶ 54-70, detailing allegations from 2015-2018.  Even for those sales that occurred before the effective date of the GPTA, Defendants argue that Plaintiffs' state law inverse

condemnation claim falls squarely within the ambit of *Schaefer's* holding that PA

256 provides the exclusive remedy for a claimant to obtain surplus proceeds from

a foreclosure sale under state law.  Plaintiffs argue, however, that dismissal is not

warranted under § 211.78t and *Schafer* because *Jackson* governs right of first

refusal cases.  In *Jackson v. Southfield Neighborhood Revitalization Initiative*, ⸺

Mich. App. ⸺; 2023 WL 6164992, at *14-15 (Mich. Ct. App. Sept. 21, 2023), the

Michigan Court of Appeals clarified that *Rafaeli* did not limit takings claims under

the Michigan Constitution to only situations where the government retained

surplus cash proceeds following a tax foreclosure sale.  Instead, in situations when

there was not a public tax-foreclosure sale, the "surplus" was calculated based on

the value of the property retained, less what was legally owed.  *Id*.  Plaintiffs

contend that, in the case of right of first refusal cases, § 211.78t is not the

exclusive remedy, based on *Jackson*.  Plaintiffs argue that the *Schafer* analysis

expressly does not apply to right of first refusal cases as it is a discussion of

"surplus funds" and "remaining proceeds."  "Remaining proceeds" is a defined

term in § 211.78t(12)(b), which states:

> (b) "Remaining proceeds" means the amount equal to
> the difference between the amount paid to the
> foreclosing governmental unit for a property due to the
> sale or transfer of the property under section 78m and
> the sum of all of the following:
>
> (i) The minimum bid under section 78m.

           (ii) All other fees and expenses incurred by the
foreclosing governmental unit pursuant to section 78m
in connection with the forfeiture, foreclosure, sale,
maintenance, repair, and remediation of the property
not included in the minimum bid.

           (iii) A sale commission payable to the foreclosing
governmental unit equal to 5% of the amount paid to
the foreclosing governmental unit for the property.

Plaintiffs point out that under the previous GPTA, the amount paid to the

foreclosing government unit when exercising the right of first refusal is the

minimum bid.  Mich. Comp. Laws § 211.78m (2019).  Applying the formula listed

above in right of first refusal cases always results in a negative number.

Accordingly, there will never be "remaining proceeds."  Thus, Plaintiffs assert that

there is no provision in § 211.78t to resolve a right of first refusal case and

applying that procedure here would be unconstitutional because *Jackson* finds

that plaintiffs who are victims of a right of first refusal are entitled to "fair market

value," less the taxes owed.

     The Treasurer does not respond to Plaintiffs' *Jackson* argument, but the

Awad Defendants contend that the statute makes no distinction between those

properties sold at auction versus a right of first refusal.  The Awad Defendants

argue that by its express language, § 211.78t applies to all properties sold or

transferred under the provisions of § 211.78m:

(1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under section 78m…

* * *

(b) **For foreclosed property transferred or sold under section 78m** before July 18, 2020…. (Emphasis added).

Accordingly, the Awad Defendants argue that all properties transferred under § 211.78m are subject to the claims process.  They further point out that § 211.78m covers both disposition of properties both via auction (subsection 2), and under a right of first refusal (subsection 1).  Subsection 1 of § 211.78m discusses the claims procedure:

If … 1 or more claimants have filed a claim for remaining proceeds from the foreclosed property under section 78t(2), a city… may purchase foreclosed property located within that city… included in the judgment and subject to sale under this section by paying the foreclosing governmental unit the greater of the minimum bid or the fair market value of the property.

Thus, the Awad Defendants maintain that the claims process is "the exclusive mechanism for a claimant to claim and receive any applicable remaining proceeds under the laws of this state."  Mich. Comp. Laws § 211.78t(11).

*Jackson* does not appear to stand for the proposition that Plaintiffs claim. In *Jackson*, the City of Southfield purchased tax-foreclosed properties from

Oakland County under the right of first refusal.  *Id*. at *3-4.  Southfield then sold

the properties to a third-party developer to "rehabilitate and renovate these

homes and then return them to productive use and purchase."  *Id*. at *4.

The plaintiffs sued, alleging violations of the Takings Clauses of the Michigan and

United States Constitutions for the loss of equity in their homes.  *Id*. at *8.

They also brought a RICO claim.  *Id*.  While the case was pending, the Michigan

Supreme Court decided *Rafaeli*.  *Id*. at *10-11.  After *Rafaeli* and the subsequent

amendment of the GPTA, the trial court dismissed the case.  Among the reasons

for the dismissal was that "the Supreme Court has not declared *Rafaeli*

retroactive and the lack of retroactive language in MCL 211.78m indicates a lack

of intent for retroactive application by the Legislature."  *Id*. at *18-19.  On appeal,

the *Jackson* court held that "[Oakland] County took the plaintiffs' property

without compensation, in violation of the [US Constitution's] Takings Clause."  *Id*.

at *43.  The court further observed that "[i]n situations when there is not a public

tax-foreclosure sale, *Rafaeli* requires the 'surplus' to be calculated on the basis of

the value of the property retained, less what was legally owed" and, "the

plaintiffs were entitled to relief under the amended statutes."  *Id*. at *53, 57.

Thus, nothing in *Jackson* suggests that the revised §§ 211.78m and 211.78t did

not apply in right of first refusal cases.  Instead, it held that the only distinction

between cases where the property is sold at auction and where the property is

transferred under a right of first refusal is that the value of the remaining interest

is determined by the auction price in the first instance, and fair market value in

the second.  *Id*. at *48-53.  Arguably, Plaintiffs have an exclusive remedy to seek

the fair market value of their properties under the revised GPTA.  However, the

Michigan law appears unsettled in several important respects in right of first

refusal cases given that the Michigan Supreme Court has scheduled oral argument

on the application for leave to appeal from the *Jackson* decision and has

requested supplemental briefing on the following issues:

> (1) whether the Court of Appeals correctly concluded
> that both MCL 211.78t and MCL 211.78m apply
> retroactively; (2) if so, whether plaintiffs' constitutional
> takings claims are precluded by MCL 211.78t, see
> *Hathon v State of Michigan*, —— Mich. ——, 2 N.W.3d
> 898 (2024)); (3) if not, whether a violation of the Takings
> Clause of the Michigan Constitution, Const. 1963, art.
> 10, § 2, or of the Fifth Amendment of the United States
> Constitution may occur as to a tax foreclosure when
> there is no public auction of the foreclosed property and
> a governmental unit retains or purchases the property,
> resulting in no surplus proceeds; (4) whether there was
> a violation of either Takings Clause by Oakland County
> under the facts of this case; and (5) if so, what
> compensation, if any, the taxpayer is entitled to from
> Oakland County.

*Jackson v. Southfield Neighborhood Revitalization Initiative*, 12 N.W.3d 600, 601

(Mich. 2024).  Because the law applicable to Plaintiffs' state law inverse

condemnation claim is not settled, the court will hold in abeyance a decision on the futility of this claim as to Wayne County.

The Awad Defendants also argue that PA 256 mandates dismissal of Plaintiffs' RICO claim based on it providing the "exclusive remedy" to recover "surplus proceeds." According to the Awad Defendants, there is ample authority for the proposition that no federal takings claim may lie where there is a state statutory path to recover the surplus proceeds and the property owners fails to follow that procedure. *Rafaeli*, 505 Mich. at 461 ("[*Nelson v. City of New York*, 352 U.S. 103 (1956)], on the other hand, informs us that no federal Takings Clause claim will exist when there is a statutory path to recover the surplus proceeds but the property owners fail to avail themselves of that procedure. Read together, [*United States v. Lawton*, 110 U.S. 146 (1884)] and *Nelson* establish that the Takings Clause under the United States Constitution may afford former property owners a remedy when a tax-sale statute provides the divested property owner an interest in the surplus proceeds and the government does not honor that statutory interest.").

Defendants, however, provide no similar authority as to relates to Plaintiffs' RICO claim. Indeed, the damages a RICO plaintiff may seek under federal law are not limited to the "surplus proceeds." *See e.g.*, *City of Plaquemine v. Team Health Holdings, Inc.*, 2024 WL 1346986, at *4 (E.D. Tenn. Mar. 29, 2024) ("RICO provides

a private cause of action for treble damages and attorney fees to '[a]ny person injured in his business or property by reason of a violation of' one of the four provisions of 18 U.S.C. § 1962.") (quoting 18 U.S.C. § 1964(c)).  The Awad Defendants do not explain how the Michigan Legislature, via the GPTA, can essentially bar a plaintiff from pursuing a federal statutory cause of action such as RICO.  Moreover, Defendants do not provide any basis for the court to revisit its earlier decision finding that the RICO claim may go forward under applicable Sixth Circuit authority.  (ECF No. 97, PageID.964-967, Opinion and Order dated 7/21/23, finding that Plaintiffs' RICO claim may proceed); *see Hayden v. Rhode Island*, 13 F. App'x 301, 302 (6th Cir. 2001) ("Under the law of the case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation.  The law of the case dictates that issues, once decided, should be reopened only in extraordinary circumstances.") (citations omitted).

Accordingly, the court finds no basis to dismiss the RICO claim.

## III.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the Treasurer's motion to dismiss in part, finding he is immune under the doctrine of sovereign immunity for any actions taken on behalf of the state, but he is not immune as to actions taken by Wayne County and remains in the suit in his official capacity to this extent.  The motion to amend the complaint to add Wayne County is **DENIED** as

moot, given the court's decision that Wayne County is a Defendant because the

Treasurer was sued in his official capacity.  Plaintiffs' motion for leave to amend is

**DENIED** as futile as to the procedural due process claim because that claim is

barred by the statute of limitations.  A decision on the futility of Plaintiffs' state

law inverse condemnation claim against Wayne County is **HELD IN ABEYANCE**

pending a decision from the Michigan Supreme Court in *Jackson*.  The Awad

Defendants' motion to dismiss is **DENIED** because the court finds that PA 256

does not provide the exclusive remedy to Plaintiff's RICO claims.

        **SO ORDERED**.

Date: January 28, 2025                  s/F. Kay Behm
                                          F. Kay Behm
                                          United States District Judge