UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY FLUMMERFELT, *et al*.,                    Case No. 22-10067

     Plaintiffs,                              F. Kay Behm
v.                                             United States District Judge

CITY OF TAYLOR, *et al*.,

     Defendants.
_____ /

**OPINION AND ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 172) AND PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION (ECF No. 169)**

**I.      PROCEDURAL HISTORY**

Plaintiffs Judy Flummerfelt, Frances Ridenour, Anthony Hamilton, and Holly

Hamilton, on behalf of themselves and those similarly situated in the City of

Taylor, filed suit alleging violations of the United States Constitution and Michigan

law on January 11, 2022.  They later amended their complaint.  (ECF No. 6).  The

claims in the Amended Complaint arise from the tax foreclosure of the named

Plaintiffs' homes located in the City of Taylor.  They allege that, through illegal

conspiracies, they were denied the surplus value or equity in their foreclosed

homes.

The City of Taylor, the Wayne County Treasurer, the Awad Defendants, and Defendant Sollars previously moved to dismiss the amended complaint.  The court adopted the Magistrate Judge's report and recommendation on the motions, as modified, and concluded in relevant part that (1) Plaintiffs conceded that the federal takings claim against the Wayne County Treasurer was time-barred; and (2) Sixth Circuit authority required the court to abstain on the state law takings claim under the *Pullman* abstention doctrine.  (ECF No. 97).  At that juncture, the following claims remained:  Procedural due process against the Wayne County Treasurer and the RICO claim against Sollars and the Awad Defendants.  (ECF No. 97, PageID.970-71).  Plaintiffs subsequently moved to amend the complaint, seeking reinstatement of their federal takings claim against the Wayne County Treasurer, stating the court did not consider applicable tolling principles and contending that *Pullman* abstention should no longer be applied to its inverse condemnation claim under the Michigan Constitution.  The court denied Plaintiffs' motion for leave to amend to add a federal takings claim as futile, given Plaintiffs' judicial admission that it was barred by the statute of limitations.  (ECF No. 139).  Further, the court determined it would no longer abstain from deciding Plaintiffs' inverse condemnation claim under Michigan law on the merits because *Pullman* abstention no longer applied.  *Id*.

2

The court recently denied, in part, Defendant Wayne County Treasurer's motion to dismiss the amended complaint for lack of subject matter jurisdiction, finding that the Treasurer is entitled to sovereign immunity under the holding of *Bowles v. Sabree*, 2024 WL 1550833, at *3 (6th Cir. Apr. 10, 2024) for any actions taken on behalf of the state, but he is not immune as to actions taken by Wayne County and remains in the suit in his official capacity to this extent.  The motion to amend the complaint to add Wayne County was denied as moot, given the court's decision that Wayne County is a Defendant because the Treasurer was sued in his official capacity.  *Id*.  Thus, the court need not address the Treasurer's immunity arguments made in his motion for summary judgment any further.  The court also denied Plaintiffs' motion for leave to amend is as futile as to the procedural due process claim because that claim is barred by the statute of limitations. Accordingly, the court need not address the parties' arguments on this issue here. The court held in abeyance a decision on the futility of Plaintiffs' state law inverse condemnation claim against Wayne County pending a decision from the Michigan Supreme Court in *Jackson v. Southfield Neighborhood Revitalization Initiative*, 12 N.W.3d 600, 601 (Mich. 2024).  The Awad Defendants' motion to dismiss was denied because the court finds that PA 256 did not provide the exclusive remedy to Plaintiff's RICO claims.

Now before the court is the Treasurer's motion for summary judgment (ECF No. 172) and Plaintiffs' motion for class certification (ECF No. 169), which are fully briefed.  The court held a hearing on February 26, 2025.  For the reasons set forth below, the Treasurer's motion for summary judgment is **DENIED** and the Plaintiffs' motion for class certification is **DENIED**.

## II.  ANALYSIS

### A.   Motion for Summary Judgment

#### 1.   Standard of Review

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record...; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v.*

*McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby*,

*Inc.*, 477 U.S. 242, 251-52 (1986)).  Furthermore, the evidence and all reasonable

inferences must be construed in the light most favorable to the non-moving party.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact,

the burden of demonstrating the existence of such an issue shifts to the non-

moving party to come forward with "specific facts showing that there is a genuine

issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That is, the

party opposing a motion for summary judgment must make an affirmative

showing with proper evidence and must "designate specific facts in affidavits,

depositions, or other factual material showing 'evidence on which the jury could

reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F.Supp.2d 905, 910 (6th Cir.

2004).  To fulfill this burden, the non-moving party need only demonstrate the

minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S.

at 248; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

However, mere allegations or denials in the non-movant's pleadings will not

satisfy this burden, nor will a mere scintilla of evidence supporting the non-

moving party.  *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254.  Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252-53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323.  The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

      2.    *Written Release*

The Treasurer argues that the claims of the Hamilton Plaintiffs and Flummerfelt are barred because they released the Treasurer from liability via their Stipulated Payment Agreements (SPA).  (ECF Nos. 172-7; 172-12).  A release must be fairly and knowingly made to be valid.  *Skotak v. Vic Tanny International, Inc.*, 203 Mich. App. 616, 617-618 (1994).  Where the terms of the release are unambiguous and unequivocal, the parties' intent as expressed therein governs its scope. *Burgess v. Clark*, 215 Mich. App. 542 (1996).  The contractual language is construed in accordance with its plain and ordinary meaning. *SSC Associates Limited Partnership v. General Retirement System*, 210 Mich. App. 449, 452 (1995).  Only those claims the parties intended to be released are released. *Cordova Chemical Co v. Dep't of Nat'l Resources*, 212 Mich. App. 144, 150 (1995).  When contract language is unambiguous and unequivocal, interpretation of the contract is a question of law for the court. *Skotak*, 203 Mich. App. at 619.

The SPAs provides that "[i]f Taxpayer fails to pay . . . the property will be foreclosed and offered to the State of Michigan, local municipality, county and/or auctioned . . . . It is acknowledged by the undersigned Taxpayer and/or representative that any right the Taxpayer may have to contest or object to the Petition of Foreclosure or any Judgment . . . is hereby knowingly and voluntarily waived." *Id*. (emphasis removed)).  The Treasurer says that Plaintiffs breached

their SPAs, and the Treasurer thereafter obtained Judgments of Foreclosure. According to the Treasurer, Plaintiffs cannot now pursue claims related to the foreclosure because they are barred by the release in the Agreements.

In response, Plaintiffs contend that: their claims are not released because they do not challenge the petition or judgment of foreclosure, Wayne County breached the SPA signed by Flummerfelt, and waiver is void under the unconstitutional condition doctrine. Plaintiffs explain that their inverse condemnation claim does not challenge the petition or judgment of foreclosure, but the County's failure to provide just compensation or surplus equity as required by the constitution. As in *Jackson v. Southfield Neighborhood Revitalization Initiative*, --- Mich. App. ----; 2023 WL 6164992, at *14-15 (Mich. Ct. App. Sept. 21, 2023), the claim is for the surplus of the fair market value, less what is legally owed. Plaintiffs point out that Wayne County did not provide a procedure for Plaintiffs to recover their surplus equity *after* the foreclosure as now required by *Jackson* and *Rafaeli, LLC v. Oakland Cnty.*, 505 Mich. 429 (2020). Defendants argue that in her deposition, Holly Hamilton says she did not receive proper notification of the foreclosure and thus she is challenging the foreclosure. To the extent Hamilton might be challenging notice, that claim might be barred by the release. However, in the court's view, Hamilton's deposition testimony does

8

not change the fundamental nature of Plaintiffs' legal challenge contained in the

complaint: that Wayne County did not provide a procedure to recover surplus

proceeds *after* the foreclosure.  Nothing in the release suggests that claims other

than those challenging the foreclosure itself are released.  In reply, the Treasurer

does not even try to rebut Plaintiffs' assertion that the surplus equity claim is not

barred by the release.  Accordingly, the court finds that the surplus equity claim is

not barred by the plain language of the releases contained in the SPAs executed

by Plaintiffs because it is fundamentally not a challenge to the foreclosure

petition or judgment.  Based on the foregoing, the court need not address

Plaintiffs' other arguments against release.

### 3.    Statute of Limitations – Inverse Condemnation

The Treasurer also argues, as to Flummerfelt and Ridenour, that their

inverse condemnation claims are barred by the statute of limitations.  *Hart v. City

of Detroit*, 416 Mich. 488, 505 (1982) ("The proper limitation period to employ in

this inverse condemnation action is the general six-year period for personal

actions.").  According to the Treasurer, the action accrued when the County took

title to their properties.  *Hall*, 51 F.4th at 196.  Thus, the Treasurer argues that the

statute of limitations began to run in 2015, when the County took title and

expired in 2021, before the filing of this lawsuit in 2022.

In response, Plaintiffs argue that the six-year statute of limitations was tolled.  In *Schafer/Hathon*, the Court held that "claimants whose claims were cut short by the retroactive application of 2020 PA 256 will not be barred from relief under statutes of limitations if their claims are filed within the time they had remaining under the applicable statutes of limitations on December 22, 2020, the time 2020 PA 256 became law, and running from the date of this opinion." *Schafer v. Kent Cnty*., 2024 WL 3573500, at *20 (Mich. 2024).  The court explained that the tolling provision operated as follows:

> By way of example, if on December 22, 2020, a claimant had one year remaining on a six-year statute of limitation for a claim against a county government, the statute of limitations would not bar the claim if the claim were filed within a year of this opinion.  If two years remained on December 22, 2020, the statute of limitations would not bar a claim filed within two years of this opinion.

*Id*. at n.123.  Here, Plaintiffs had just over a year left on the limitations period on December 22, 2020.  Accordingly, their claim would be timely under *Schafer*.

The Treasurer does not seem to directly dispute Plaintiffs argument under *Schafer*.  Instead, the Treasurer argues that the applicability of *Schafer* and Mich. Comp. Laws § 211.78t to inverse condemnation claims in cases when a city exercises its right of first refusal remains unsettled and thus, the court should again abstain under *Pullman*.  Here, Plaintiffs' inverse condemnation claim rests

upon Michigan Court of Appeals decision in *Jackson v. Southfield Neighborhood Revitalization Initiative*, but recently the Michigan Supreme Court directed oral argument on the application for leave to appeal in that case and instructed the parties to file supplemental briefs addressing whether "MCL 211.78t and MCL 211.78m apply retroactively," "if so, whether plaintiffs' constitutional takings claims are precluded by MCL 211.78t," and "if not, whether a violation of the Takings Clause … may occur as to a tax foreclosure when there is no public auction of the foreclosed property and a governmental unit retains or purchases the property, resulting in no surplus proceeds[.]"  2024 Mich. LEXIS 2093 (Mich. Nov. 1, 2024).  Because the viability of Plaintiffs' inverse condemnation claim is again "unclear," the Treasurer argues that the Court should abstain from deciding it until after the resolution of this issue in state court.

In an earlier order dated July 21, 2023 (ECF No. 97), this court concluded that it must abstain from deciding the merits of Plaintiff's state inverse condemnation claim under applicable Sixth Circuit authority directing that the federal courts should abstain under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500-01 (1941).  *See Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022) (The court of appeals directed the district court to abstain from adjudicating the inverse condemnation claim because "[w]hether the facts alleged here violate the

Michigan Constitution's Takings Clause is an issue for the Michigan courts to decide."); *Sinclair v. Meisner*, 2022 WL 18034473, at *3 (6th Cir. Dec. 29, 2022) (District courts should abstain from deciding claims under the Michigan Constitution's Takings Clause).

On July 24, 2024, this court then reconsidered the application of the *Pullman* abstention doctrine in an opinion and order on Plaintiffs' motion for leave to amend the complaint.  (ECF No. 129).  *See e.g.*, *Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001); *see also Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) (noting that *Pullman* abstention may be raised *sua sponte*).  It did so based on *Jackson v. Southfield Neighborhood Revitalization Initiative*, --- Mich. App. ----; 2023 WL 6164992, at *14-15 (Mich. Ct. App. Sept. 21, 2023), issued after this court's decision, in which the Michigan Court of Appeals clarified that *Rafaeli, LLC v. Oakland Co.*, 505 Mich. 429 (2020) did not limit takings claims under the Michigan Constitution to only situations where the government retained surplus cash proceeds following a tax foreclosure sale.  Instead, in situations when there was not a public tax-foreclosure sale, the "surplus" was calculated based on the <u>value</u> of the property retained, less what was legally owed.  *Id*.  Notably, the *Pullman* abstention doctrine applies "only where state law is unclear *and* a clarification of that law would preclude the need

to adjudicate the federal question." *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011).  After *Jackson*, this court concluded state law had been sufficiently clarified and there is no assertion that the resolution of this or any other state law issue would resolve the last remaining federal constitutional claim pending in this matter, Plaintiffs' procedural due process claim.  *See e.g.*, *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 233 (6th Cir. 2011) ("The Ohio Supreme Court's decision … clarified any relevant confusion regarding Ohio law's treatment of provisional ballots cast in the wrong precinct and made equally plain that the resolution of state-law issues does not resolve the constitutional dispute properly before this court.  *Pullman* abstention is, therefore, inappropriate.").  Here, there is no federal due process claim remaining which might be affected by the Michigan Supreme Court's decision in *Jackson* because this court has already determined that the statute of limitations bars Plaintiffs' federal due process claim.  (ECF No. 197).  However, based on the Michigan Supreme Court's action in *Jackson*, there remains the unsettled question of whether Plaintiffs may proceed with their state law inverse condemnation claim or whether they are limited to the remedy mechanism in the GPTA.  As indicated in the court's order on the motion to dismiss (ECF No. 197), the court will hold deciding the merits of Plaintiffs' inverse condemnation claim in abeyance,

pending a decision from the Michigan Supreme Court in *Jackson*, on which oral

argument is scheduled for April 2025.

      B.    <u>Motion for Class Certification</u>

      1.    *Legal Standards*

Federal Rule of Civil Procedure 23 governs class actions and sets forth

requirements to certify a class.  Class certification is appropriate when the moving

party "affirmatively demonstrate[s] ... compliance" with Rule 23.  *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (noting that "Rule 23 does not set

forth a mere pleading standard").  This is a two-step process.  The party seeking

class certification first must satisfy the four threshold showings under Rule 23(a)

that:

> (1) the class is so numerous that joinder of all members
> is impracticable;
> (2) there are questions of law or fact common to the
> class;
> (3) the claims or defenses of the representative parties
> are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. Proc. 23.  These "four requirements—numerosity, commonality,

typicality, and adequate representation—effectively limit the class claims to those

fairly encompassed by the named plaintiff's claims."  *Wal-Mart Stores, Inc*., 564

U.S. at 349 (quotations omitted).

Second, the moving party must show that its proposed class "satisf[ies] at least one of the three requirements listed in Rule 23(b)." *Id.* at 345. For Rule 23(b)(3) classes like Flummerfelt's proposed class, the plaintiff must show "predominance (that "the questions of law or fact common to class members predominate over any questions affecting only individual members"), superiority (that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"), and ascertainability (an implied requirement that the putative class members can be readily identified based on the class definition)." *Tarrify Properties, LLC v. Cuyahoga County, Ohio*, 37 F.4th 1101, 1105–06 (6th Cir. 2022).

While district courts enjoy "broad discretion" in deciding whether class certification is appropriate, *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 722 F.3d 838, 850 (6th Cir. 2013), they must conduct a "rigorous analysis" that shows that all of Rule 23 prerequisites are met prior to certifying a class. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1078–79 (6th Cir. 1996). Accordingly, the party seeking class certification must satisfy "(1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). "A failure on either front dooms the class." *Id.*

2.    *Analysis*

Plaintiffs propose two classes:

> All persons and entities that owned real property in the
> City of Taylor whose real property, during the relevant
> time period, was seized through a real property tax
> foreclosure and subsequently purchased via a local
> municipality's "right of refusal" (MCL 211.78m), which
> was worth more than the total tax delinquency taxes
> owed and were not refunded the surplus equity in
> excess of the delinquent tax amount. (herein referred to
> as "Class One")

> All persons and entities described in Class One whose
> real property was transferred from the City of Taylor to
> any entity or entities owned by or associated with
> Defendants Shady Awad or Hadir Altoon (herein referred
> to as "Class Two").

(ECF No. 169, PageID.2040).  Plaintiffs also propose to appoint Plaintiff Judy

Flummerfelt and Holly Hamilton as class representatives and appoint Mark L.

McAlpine and Scott F. Smith as co-lead class counsel.  *Id.*

A similar class was recently rejected in *Sinclair v. County of Oakland*, 2025

WL 42956, *2 (E.D. Mich. Jan. 7, 2025) (Berg, J.).[1]  There, the court noted the

plaintiff's "uphill battle" in attempting to certify a class because of the need for

---

[1]  The proposed class in *Sinclair* was defined as follows: "All persons and entities that
owned real property in Oakland County whose real property, during the relevant time period,
was seized through a real property tax foreclosure and subsequently purchased via a local
municipality's right of first refusal program (MCL 211.78m), which was worth more than the
total tax delinquency taxes owed and were not refunded the surplus equity in excess of the
delinquent tax amount."

individualized inquiry into the fair market value of each putative class member's property to determine (1) who falls within the class and who does not; and (2) individual damages. *Id*. As the *Sinclair* decision points out, the Sixth Circuit in *Bowles v. Sabree*, 121 F.4th 539, 547 (6th Cir. 2024) made it clear that the need for such an individualized inquiry presented a "significant obstacle" to class certification in class actions, like that here, in which plaintiffs are seeking surplus equity. The *Bowles* court emphasized that class actions come with an "implied requirement" of ascertainability ("that the putative class members can be readily identified based on the class definition"), and found in *Tarrify* that an equity-based class could not meet it. *Id*. at 550 (citing *Tarrify*, 37 F.4th at 1106). Determining fair market value involves an "individualized assessment" of each property and requires "proof that is variable in nature and ripe for variation in application." *Id*. (quoting *Tarrify*, 37 F.4th at 1106–07). And when mini-trials "become necessary to determine who is in and who is out, the class-action vehicle imposes inefficiencies rather than ameliorates them." *Id*. (quoting *Tarrify*, 37 F.4th at 1106). On this basis, *Tarrify's* class "got the boot." *Id*. Accordingly, the *Bowles* court concluded that a proposed class definition that includes former property owners seeking surplus equity was simply not permissible. *Id*. at 551.

Additionally, three judges in the Eastern District have denied certification of similar surplus equity classes. *Sinclair*, *supra*; *see also Hall v. Oakland County*, 2024 WL 209702, at *15 (E.D. Mich. Jan. 19, 2024) (Borman, J.); *Taylor v. County of Oakland*, 2024 WL 188376, at *8 (E.D. Mich. Jan. 16, 2024) (Lawson, J.). The only class that was certified which Plaintiff relies on was decided two years before *Tarrify*. *See Arkona, LLC v. County of Cheboygan*, 2020 WL 4366027, at *1 (E.D. Mich. July 30, 2020).[2] In light of *Tarrify* and *Bowles*, this case is not persuasive.

For a class to be certified, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012). Determination of class membership necessarily must be accomplished at the outset of class litigation in order to supply the required notice to putative Rule 23(b)(3) class members. *Taylor*, 2024 WL 188376, at *7; *see also* Fed. R. Civ. Proc. 23(c)(2)(B) ("For any class certified under Rule 23(b)(3) ... the court must direct to class members ... notice" of the action, class definition, class claims and defenses, binding effect of class judgment, and ability to appear and to request exclusion); *Cole v. City of*

---

[2] Plaintiffs also relied on the lower court's decision in *Bowles v. Sabree*, but this decision was reversed on appeal after Plaintiffs submitted their initial brief.

*Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (recognizing that "ascertainability aids

the inherent efficiencies of the class device by ensuring administrative feasibility,"

which includes "the practical need to notify absent class members and to allow

those members a chance to opt-out and avoid the potential collateral estoppel

effects of a final judgment"); *Fox v. Saginaw County*, 67 F.4th 284, 302 (6th Cir.

2023) ("To certify a class action, ... a district court must forecast how the parties

will conduct the litigation from the certification stage through the trial to the final

judgment.").

      As in the *Bowles*, *Tarrify*, *Hall*, *Taylor*, and *Sinclair*, ascertaining who is in the

classes proposed by Plaintiffs requires an individualized determination of each

property's fair market value at the time of the foreclosure to know whether the

value exceeded the amount of taxes owed and thus, whether the former owner is

entitled to any surplus equity.  Plaintiffs argue that the value of such non-

excluded properties can be determined using state equalized tax valuations, but

the Sixth Circuit already rejected that argument because state equalized property

valuations are only a starting point to determining fair market value.  *Sinclair,* at

2025 WL 42956 at *5 (citing *Tarrify*, 37 F.4th at 1107; *Hall*, 2024 WL 209702, at

*11 (noting that the State Equalized Value (SEV) of a foreclosed property is not an

ultimate determination of the fair market value of that property but instead just a

19

measure of taxable value and one factor for the Court to consider along with

other data, such as expert appraisals)).  As explained in *Taylor*, "(1) tax valuation is

merely one data point that may have a bearing on market value, not a

determination of market value per se, (2) variations in market conditions over

time would require individualized assessments of market conditions at the time of

each foreclosure, (3) tax valuations, unlike market sales, do not include any

component of value based on the interior condition of the premises, (4) the

methodology of tax valuation inherently is designed to be applied in gross, in

order to achieve uniformity in valuation and avoid peculiarly high or low

valuations for individual properties, and (5) due to the inherent nature of real

estate, the specific location of every property becomes a dominant component of

the valuation, which is a feature entirely overlooked by a generalized tax

valuation scheme."  2024 WL 188376, at *7 (citing *Tarrify*).  Plaintiffs acknowledge

that SEV is typically less than fair market value and thus proposes that the classes'

damages are "easily calculable by subtracting the tax delinquency amount from

the real property's fair market value, which can easily be determined by

appointing a special master to appraise properties and determine damages, using

tax assessments (State Equalized Value times a multiple), and/or relying on

modern appraisal method reports, such as those provided by HouseCanary."  (ECF

No. 169, PageID.2063).  Such a need for expert appraisals in addition to state

equalized property valuations "underscore[s] the fact-intensive nature of value

determination" and the need for "mini-trials" to ascertain class membership.

*Sinclair*, 2025 WL 42956, at *6; *Taylor*, 2024 WL 188376, at *7; *Hall*, 2024 WL

209702, at *12.  As Judge Berg concluded in *Sinclair*, the "problem is that [the

Plaintiff's] proposed method of relying on property valuations, SEV, and expert

appraisals cannot decisively determine fair market value, it simply offers

additional evidence for the Court or jury to consider in their fact-intensive inquiry

into the fair market value of each putative class member's foreclosed property."

*Id*. at *6.

Plaintiffs' other proposal is that the fair market value could be determined

by a court-appointed special master, such as a real estate appraiser jointly

selected by the parties, who could appraise the properties to determine fair

market value at the time of transfer.  (ECF No. 169, PageID.2063-64).  If the party

disagrees with the special master's valuation determination, the District Court

could then hold a hearing and make a final determination.  *Id.* at PageID.2064.

However, the Sixth Circuit has already rejected the assertion that appointing a

special master to determine fair market value disputes would make classwide

relief "more palatable" because the proposal did not "cure the problem that this

case will boil down to mini trials over each property's value upon transfer."
*Sinclair*, 2025 WL 42956, at *8 (quoting *Tarrify*, 37 F.4th at 1109).

Plaintiffs' readily apparent need to rely on property valuations and expert appraisals (via special master or otherwise) will, without question, require the conduct of "mini-trials" to ascertain class membership.  Thus, the court concludes that the class is unascertainable without a prior individual assessment as to the eligibility of each member and it cannot be certified.  Because the Plaintiffs failed to meet the ascertainability requirement of Rule 23(b)(3), the court need not address the Rule 23(a) factors or the other requirements found in Rule 23(b)(3).
*See Pilgrim*, 660 F.3d at 945 (failure to satisfy any of four Rule 23(a) factors or one of Rule 23(b)'s requirements "dooms the class"); *see also Ousley v. CG Consulting LLC*, 2022 WL 17741065, *2 (S.D. Ohio Dec. 16, 2022) (Plaintiffs failed meet commonality and typicality requirements of Rule 23(a), so the court need not address the remaining Rule 23(a) factors or the Rule 23(b)(3) requirements).

## III.   CONCLUSION

For the reasons set forth above, the Treasurer's motion for summary judgment is **DENIED** as to the claimed release, Plaintiffs' inverse condemnation claim will continue to be held in abeyance pending a decision from the Michigan

Supreme Court in *Jackson*, and Plaintiffs' motion for class certification,

appointment of class counsel, and class representatives is **DENIED**.

      **SO ORDERED**.

Date: February 28, 2025           <u>s/F. Kay Behm</u>
                                                F. Kay Behm
                                              United States District Judge