UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUDY FLUMMERFELT, *et al.*,

Plaintiffs,

v.

CITY OF TAYLOR, *et al.*,

Defendants.

_________________________ /

Case No. 22-10067

F. Kay Behm
United States District Judge

**OPINION AND ORDER ON DEFENDANT SOLLARS' MOTION FOR SUMMARY JUDGMENT (ECF No. 216)**

## I. PROCEDURAL HISTORY

Plaintiffs asserted three claims against Defendant Sollars: civil RICO under 18 U.S.C. § 1961 *et seq*. (Count V), unjust enrichment (Count VI), and civil conspiracy under 42 U.S.C. § 1983 (Count VII). (ECF No. 6, PageID.100-113). The court previously dismissed Plaintiffs' unjust enrichment (Count VI) and civil conspiracy (Count VII) claims against Defendant Sollars, *see* July 21, 2023 Opinion and Order, ECF No. 97, PageID.963-969, and on March 6, 2025, this Court granted the Awad Defendants' motion for summary judgment on Plaintiffs' civil RICO claims. (March 6, 2025 Opinion and Order, ECF No. 201, PageID.3975 (finding that "Plaintiffs' equity was already 'stolen' at the point of foreclosure" and that the decision to foreclose "rested in the hands of Wayne

County" and granting summary judgment for the reason that "causation is too attenuated and Plaintiffs' RICO claims must fail for lack of proximate cause").[1]

Before the court is Sollars' motion for summary judgment on Plaintiffs' RICO claims. Sollars argues that the RICO claims fail as a matter of law for the same reasons the court set forth in the March 6, 2025 Opinion and Order regarding proximate causation. (ECF No. 216). Plaintiffs argue that under Michigan law, the City of Taylor can now be held liable for damages for the state inverse condemnation claim, which makes Sollars' participation in the bribery scheme the proximate cause of Plaintiffs' damages. (ECF No. 221). The court held a hearing on November 10, 2026. For the reasons set forth below, Sollars' motion for summary judgment is **GRANTED**.

## II. FACTUAL BACKGROUND

The court relies on the factual background set forth in its March 6, 2025 Opinion and Order. (ECF No. 201).

---

[1] The court notes that the Altoon Defendants (Hadir Altoon, Taylor South Investment, LLC, and Abigail Investments, LLC had also filed a motion for summary judgment on the RICO claims (ECF No. 217), but the parties stipulated to dismiss these Defendants. (ECF No. 223).

## III. ANALYSIS

As succinctly explained by one Michigan court, the law of the case doctrine applies in two discrete circumstances. *Stryker Corp v. TIG Ins. Co.*, No. 1:05-CV-51, 2014 WL 198678, at *1 (W.D. Mich. Jan. 15, 2014), aff'd 2014 WL 1328151 (W.D. Mich. Apr. 1, 2014). The first occurs when a case has been remanded by an appellate court. There, "the trial court is bound to proceed in accordance with the mandate and the law of the case as established by the appellate decision." *Id*. (citing *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012); *Hanover Ins. Co. v. Am. Eng'g Co*., 105 F.3d 306, 312 (6th Cir. 1997)). Once an appellate court decides on a rule of law, "that decision should continue to govern the same issues in subsequent stages of the same case." *Id*. (quoting *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)).

The other discrete circumstance for applying the law of the case doctrine is when "a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Stryker Corp.*, 2014 WL 198678 (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011)). Unlike the mandate rule, which is a rule of preclusion, this application of the law of the case doctrine does not limit the court's power, but "merely directs its discretion." *Id*. (citing *Pepper*, 562 U.S. at 506). As

applied to decisions of the district court, the law of the case doctrine is mitigated by Federal Rule of Civil Procedure 54(b), which means that "every order short of a final decree is subject to reopening at the discretion of the district judge." *Id.* (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983)). Thus, unlike the mandate rule, where the district court is required to follow a previous appellate holding, this application the law of the case doctrine is discretionary, "allowing the district court to revisit previous decisions on the basis of new evidence, new law, or a determination that the previous decision was not sustainable." *Id.* (citing *American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *see also Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 767 (6th Cir.), *opinion amended on denial of reh'g*, 877 F.2d 5 (6th Cir. 1989) (The law of the case doctrine precludes reconsideration of a previously decided issue unless one of three "exceptional circumstances" exists: "the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice." (quoting *Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.*, 761 F.2d 649, 657 (Fed. Cir. 1985))).

The parties here disagree on whether the law of the case doctrine requires the court to decide the pending motion for summary judgment in Sollars' favor, based on its previous decision granting summary judgment on Plaintiffs' RICO claim to the Awad Defendants. Plaintiffs contend that the court's prior decision was controlled by *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), but that the law has since evolved, mandating a different result. The court starts with its prior analysis of proximate cause under RICO:

> Here, the conduct that caused Plaintiffs' harm – the taking of Plaintiffs' equity by the County – was the foreclosure conducted by Wayne County. Before 2020, the Michigan General Property Tax Act did not provide for the return of excess proceeds or equity to foreclosed property owners. As explained in *Rafaeli v. Oakland Cty.*, 505 Mich. 429, 442 (2020), the GPTA did not provide for any disbursement of the surplus proceeds to the former property owner and did not provide former owners a right to make a claim for these proceeds. As explained by Michigan Court of Appeals, at the moment the County foreclosed on the plaintiffs' properties, by statute the plaintiffs' equity was essentially erased, and "[re]gardless of what occurred [afterwards], no money was ever going to be paid to plaintiffs." *Jackson v. Southfield Neighborhood Revitalization Init.*, --- Mich. App. ----; 2023 WL 6164992, at *22 (Mich. Ct. App. Sept. 21, 2023). There, no civil conspiracy claim could lie because all the damage to Plaintiffs was done when the County acted and that "could not have changed regardless of the subsequent actions of the city and the corporate defendants." *Id*. Similarly here, once the County foreclosed, Plaintiffs suffered their injuries and nothing in the bribery scheme changes that fact. And like in *Hemi*, the conduct that caused the harm – the foreclosure – is conduct entirely distinct from the conduct giving rise to the bribery.

> Plaintiffs contend that the Awad Defendants' conspiracy was to steal the Plaintiffs' equity and that Plaintiffs were direct victims. However, Plaintiffs' equity was already "stolen" at the point of foreclosure. And the Awad Defendants were not involved in any decision to foreclose the properties. That decision rested in the hands of Wayne County, who is not alleged to be a co-conspirator. The harm was done at the point of foreclosure because that is the point at which Plaintiffs lost their equity, and subsequent events, including Taylor's exercise of its right of first refusal and the Awad Defendants engaging in a bribery scheme, could not be the proximate cause of Plaintiffs' loss of equity. Whether Wayne County exercised its right of first refusal, sold the property at public auction, or Taylor exercised its right of first refusal does not change the fact that Plaintiffs' right to the equity was extinguished by the foreclosure itself. Accordingly, causation is too attenuated and Plaintiffs' RICO claims must fail for lack of proximate cause.

(ECF No. 201, PageID.3973-75).

In opposing Sollars' motion for summary judgment, Plaintiffs ask the court the revisit its proximate cause analysis based on subsequent case law from the Michigan Supreme Court. Plaintiffs contend that under state law as set forth in the *Jackson* concurrence and *Yono v. Cnty. of Ingham*, No. 166791, 2025 WL 1957960 (Mich. July 16, 2025), the harm to Plaintiffs occurred at the time the properties were transferred to the City of Taylor, which is after the RICO conspiracy was consummated. The Michigan Supreme Court in *Jackson* held that "[b]ecause these properties were purchased for the minimum bid in lieu of being made available to purchase

through public auctions, to the extent the value of plaintiffs' respective properties exceeded the amount plaintiffs owed in delinquent taxes and attendant fees, we conclude that there was a taking without just compensation in violation of the Michigan Constitution." *Jackson v. Southfield Neighborhood Revitalization Initiative*, No. 166320, 2025 WL 1959046, at *5 (Mich. July 16, 2025). The Court does not explicitly state whether the taking occurred on foreclosure by the County or when it was purchased for the minimum bid by the City of Southfield or at some other point in time.

But the concurrence raised this issue, finding a conflict between *Rafaeli*, which found that the taking occurred when the surplus funds were retained by the foreclosing governmental unit, *Jackson*, 2025 WL 1959046, at *10 (citing *Rafaeli, LLC v. Oakland Co.*, 505 Mich. 429, 474 (2020)), and the Sixth Circuit's decision in *Hall v. Meisner*, 51 F.4th 185, 196 (6th Cir. 2022). In *Hall*, the Sixth Circuit held under similar factual circumstances that the County alone was responsible for the taking of the plaintiffs' property and that the "event" that constituted a taking was the vesting of absolute title to the plaintiffs' home. *Id*. The *Jackson* concurrence expressed its position that *Hall* erred and the decision conflicts with *Rafaeli*, which holds that the seizing of

real property to collect unpaid taxes is only a taking if the government appropriates property in excess of what is owed. *Jackson*, 2025 WL 1959046, *11. That is, according to the concurrence, "the event that gives rise to a compensable takings claim is the event following entry of a judgment of foreclosure when the government fails to provide the divested property owner with the opportunity to seek compensation for the excess monetary value of any property interest that survived the foreclosure." *Id*.

The concurrence further explains that if *Hall* selected the wrong moment in time to determine the "act of taking" then its identification of the governmental unit liable for the taking is also wrong. *Id*. at *12. The concurrence went on to explain that in *Jackson* and *Hall*, another governmental unit, the City of Southfield, purchased the foreclosed property after exercising its right of first refusal and once they did so, the foreclosing governmental unit (FGU) had no discretion and was required to accept the money and convey title to the property within 30 days of purchase. Thus, the FGU received no more than it was owed in exchange for the property unless Mich. Comp. Laws § 78m(1)[2] is triggered. *Id*. In *Jackson* and *Hall*, the

---

[2] "If property purchased by a city, village, township, or county under this subsection is subsequently sold for an amount in excess of the minimum bid and all costs incurred relating to demolition, renovation, improvements, or infrastructure development, the

properties at issue were transferred to the Southfield Neighborhood Revitalization Initiative (SNRI) and unless that transaction was for an amount in excess of the minimum bid, Oakland County would not have received anything beyond the taxes, fees, and interest lawfully owed. *Id*. If true, then the City and SNRI are the only entities that received more than what was owed. *Id*.

The majority opinion in *Jackson*, however, does not make clear at what precise point the taking under Michigan law occurred. The Court explained that:

> the operative question is whether a taking occurs when property was not offered for sale at a public auction because a governmental unit other than the state purchased the property from the FGU for a minimum bid through the right-of-first-refusal process outlined in former MCL 211.78m. The Court of Appeals concluded that these property transfers constituted a taking under the same principles outlined by this Court in *Rafaeli*. *Jackson II*, 348 Mich App at 360-362, 18 N.W.3d 27. We agree that this scenario constitutes a taking under the Michigan Constitution.

---

excess amount shall be returned to the delinquent tax property sales proceeds account for the year in which the property was purchased by the city, village, township, or county or, if this state is the foreclosing governmental unit within a county, to the land reutilization fund created under section 78n. Upon the request of the foreclosing governmental unit, a city, village, township, or county that purchased property under this subsection shall provide to the foreclosing governmental unit without cost information regarding any subsequent sale or transfer of the property."

*Jackson*, 2025 WL 1959046, *3. This suggests that the Court found the transfer under the right of first refusal was the taking. However, the Court also held that "where, as here, there are no sales by public auction, the government commits a taking if the value of the property retained exceeds what the government was owed." *Id*. at *5. This suggests that the government entity who was owed the taxes commits the taking when it forecloses on a property/retains the property whose value exceeds the taxes owed. It is not entirely clear what the Court meant by "retains" because neither the FGU nor the City of Southfield ultimately "retained" the property, as it was eventually transferred to SNRI. But both retained the property for some period of time during the proceedings. And finally, the court concluded that "[b]ecause these properties were purchased for the minimum bid in lieu of being made available to purchase through public auctions, to the extent the value of plaintiffs' respective properties exceeded the amount plaintiffs owed in delinquent taxes and attendant fees, we conclude that there was a taking without just compensation in violation of the Michigan Constitution." *Id*. Again, the Court does not clearly indicate at what point in the process the taking occurred. Further muddying the waters, the Court expressly declined

to determine whether the FGU or the governmental entity who exercised the right of first refusal is the party liable for the taking. *Id.* at n. 7. While the Michigan Supreme Court in *Rafaeli* identified the taking—the appropriation of property in excess of what is owed—at the point when a property was sold at public auction and the surplus proceeds were retained, the Court in *Jackson* does not appear to have similarly pinpointed the juncture at which a taking occurs where the fair market value of the property may exceed the taxes owed and the property is transferred under a right of first refusal.

Notably, the *Jackson* Court did not address the court of appeals' analysis on the causation elements of the conspiracy and unjust enrichment claims, which relied on *Hall v. Meisner* and on which this court relied for its proximate cause analysis under RICO:

> Importantly, under the GPTA as it then existed, at the moment Oakland County took title to plaintiffs' properties in this case, regardless of what happened afterward, there was no way plaintiffs would ever be paid for their equitable interests in their properties. To put it another way, plaintiffs would have been in the exact same position if Oakland County had sold the properties at a public auction, kept the properties for itself, or sold the properties to Michigan for the minimum bid. Regardless of what occurred, no money was ever going to be paid to plaintiffs. Thus, all of the damages were done when Oakland County acted and could not have changed regardless of the

> subsequent actions of the city and corporate defendants.
>
> Therefore, with respect to the city and corporate defendants, as related to plaintiffs' claims against them, they simply did not cause plaintiffs to suffer damages.

*Jackson*, 348 Mich. App. at 376. Thus, this holding appears to have been left intact by the Michigan Supreme Court.

Given the lack of clarity in the *Jackson* majority opinion and the nonbinding nature of the concurrence, the court is not inclined to conclude that "controlling authority has since made a contrary decision of law" applicable to the court's proximate cause analysis. At the hearing, however, Plaintiffs' counsel also pointed the court to a recent state circuit court decision, *Kaska v. Oakland County*, Case No. 2025-212217-NZ, Order on Defendant's Motion for Partial Summary Disposition Dated October 8, 2026. (ECF No. 229-1). There, in the context of the accrual of a claim for inverse condemnation for a statute of limitations analysis, the court held that the harm to Plaintiffs occurred when Plaintiffs were not paid the excess of what the property was worth minus what they owed, when the right of first refusal purchase window closed. *Id*. at PageID.4761-62. The court also concluded that under *Jackson* and the Michigan Constitution, the County, as the FGU,

was required to pay the former property owner the value of the property which exceeds the amount owed. *Id*. at PageID.4762. Thus, while the court concluded that the harm occurred, for purposes of accrual and the tolling the limitations period, when the right of first refusal window closed, the County was still the party responsible for the harm. Notably, in this case, the County is not alleged to be part of the RICO conspiracy. Plaintiffs argue that the "game changer" from when the court granted the Awad Defendants summary judgment on the RICO claims is that the City of Taylor can now be held liable for damages for the state inverse condemnation claim "which makes Sollars and Baum's participation in the scheme the proximate cause of the Plaintiffs' damages." (ECF No. 221, PageID.4464). But the *Kaska* case made clear that the County was still the party responsible for the harm, not the City who exercised the right of first refusal.

Plaintiffs argue that the harm was effectuated at the time of the transfer to the City of Taylor, which is after the RICO conspiracy was consummated. But does that mean Sollars' actions were a proximate cause of Plaintiffs' harm under RICO? Here, the City of Taylor, like the County, is not alleged to be part of the RICO conspiracy. (ECF No. 6, Count V). Further, while the timing of the harm may have changed under *Kaska*, proximate cause still

requires "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267-68 (1992); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985) (finding, in RICO action based on predicate acts of mail and wire fraud, that a plaintiff's damages must "flow from the commission of the predicate acts"). If the County is responsible for the harm that occurred when the property was transferred upon the City's exercise of its right of first refusal, it is difficult to see how Plaintiffs were injured by reason of the actions of Sollars or any of the RICO Defendants. Plaintiffs must show "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Applying *Kaska*, Plaintiffs suffered their injuries when the City exercised its right of first refusal and the County failed to reimburse them for the difference between what they owed in taxes/fees and the fair market value of their properties. The bribery scheme, regardless of when it started, does not change that fact. In the court's view, Defendant's misconduct did not lead directly to Plaintiffs' injuries where the City's and the County's actions directly caused Plaintiffs to suffer their injuries. *See e.g.*, *Collier v. LoGiudice*, 818 F. App'x 506, 511 (6th Cir. 2020) (defendants' misconduct in mailing false W-2s did not lead directly to plaintiff's injuries when plaintiff knew that she

received off-the-books cash payments, which were not included in the W-2s, and chose not to pay taxes on them) (citing *Hemi Grp., LLC v. City of New York*, 559 U.S. 1,11 (2010) ("[T]he conduct directly responsible for the City's harm was the customers' failure to pay their taxes. And the conduct constituting the alleged fraud was Hemi's failure to file ... reports. Thus ... the conduct directly causing the harm was distinct from the conduct giving rise to the fraud.")).

Thus, the court applies essentially the same proximate cause analysis to the RICO claims against Sollars as it did the Awad Defendants. Accordingly, Sollars' motion for summary judgment as to Plaintiffs' RICO claims under 18 U.S.C. §§ 1962(c) and (d) must be granted.[3] *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 495 (6th Cir. 1990) (finding that the

---

[3] Plaintiffs mention defaulted Defendant Baum in their response to the motion for summary judgment. The Clerk entered default against Baum on May 16, 2022. (ECF No. 38). No motion for default judgment has been filed as to Baum. The court finds it appropriate to dismiss the RICO claims against him as well. Where the court has granted summary judgment as to co-defendants, that decision inures to the benefit of the defaulting defendant in order to avoid inconsistent judgments. *See Gray v. DTE Energy Co. Ret. Plan*, No. 2:24-CV-11416-TGB-EAS, 2026 WL 800186, at *3 (E.D. Mich. Mar. 23, 2026) (citing *United States for Use of Deepali Co., LLC v. FutureNet Grp., Inc.*, No. 17-12911, 2019 WL 4463273, at *2 (E.D. Mich. Sept. 18, 2019) ("The court's grant of summary judgment in favor of Western accrues to the benefit of [the defaulting party]; it would be 'incongruous' and 'unfair' to hold [the defaulting party] liable for charges that the court has determined are unenforceable."). The court notes that a Suggestion of Death relating to Mr. Baum recently filed on the docket in this matter. (ECF No. 228). Although not necessary the court's decision, it appears that RICO claims would survive the death of an individual defendant. *See e.g.*, *Cnty. of Oakland by Kuhn v. City of Detroit*, 784 F. Supp. 1275, 1285 (E.D. Mich. 1992); *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016).

"[p]laintiffs' conspiracy claim cannot stand in light of the dismissal of their other RICO counts").

## IV. CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendant Sollars' motion for summary judgment. Defendants Sollars and Baum are **DISMISSED**. *See* note 3.

**SO ORDERED.**

Date: November 20, 2026

s/F. Kay Behm
F. Kay Behm
United States District Judge